PEOPLE v TAYLOR

Docket No. 103347. Argued January 14, 1997 (Calendar No. 3). Decided
    June 17, 1997.

Byron L. Taylor, Jose M. Vazquez, Jamar F. Pimpleton, Charles L. Mor-
    gan, and Moshi M. Howland were charged with carrying concealed
    weapons and with transporting and concealing stolen weapons fol-
    lowing a search without a warrant of their vehicle after the officers
    smelled the odor of marijuana. The 62-A District Court, Richard H.
    Timmers, J., held the searches illegal under *People v Chernowas*,
    111 Mich App 1 (1981), noting that the odor of marijuana alone
    does not constitute probable cause to search a vehicle, suppressed
    the evidence, and dismissed the charges without prejudice. The
    Kent Circuit Court, Michael R. Smolenski, J., affirmed. The Court of
    Appeals, WAHLS, P J., and WHITE, J. (CORRIGAN, J., dissenting), denied
    leave to appeal in an unpublished order (Docket No. 181651). The
    people appeal.

    In an opinion by Justice CAVANAGH, joined by Chief Justice
    MALLETT, and Justices BRICKLEY and KELLY, the Supreme Court *held*:

    The smell of marijuana alone is but one factor to consider in the
    totality of the circumstances in determining whether probable
    cause exists to conduct a search of a parked vehicle without a
    warrant.

    1. The Fourth Amendment does not guarantee freedom from all
    searches and seizures, rather only from those that are unreason-
    able. However, the Fourth Amendment applies to all seizures,
    including those that involve only a brief detention, short of a tradi-
    tional arrest. Determining when a seizure takes place is crucial to a
    Fourth Amendment inquiry because it is at that point that the
    officer must have probable cause. In this case, while this initial
    encounter of the defendants was justified as a mere inquiry, the
    level of intrusion upon the defendants escalated to a seizure requir-
    ing probable cause when the officer summoned dispatch for back-
    up.

    2. The Michigan Supreme Court has followed federal precedent
    in adopting the plain view and plain touch exceptions to the war-
    rant requirement. With respect to a plain smell exception to the
    warrant requirement, because the United States Supreme Court has

held that odor alone is not sufficient to authorize a search of a building without a warrant, the Michigan Supreme Court holds that odor alone is not sufficient probable cause to search a vehicle. Rather, odor should be but one factor to consider in a totality of the circumstances. The senses of touch and smell may establish the possible presence of contraband, the confirmation of which requires further searching. With the sense of smell, even more caution is required than with the senses of sight and touch. The smell of smoke, whether from tobacco or from marijuana, can linger and can attach to someone coming into a vehicle, regardless of whether that person ever had possession of it, or whether it was smoked in that vehicle. Requiring the use of smell as one factor in a totality of circumstances protects the rights of a defendant against unreasonable searches and seizures. Therefore, on the basis of both federal and state law, officers may not seize a person on the basis of odor alone.

3. It is clear from the record that the preliminary examination in this case was ended prematurely, requiring remand to the trial court for continuation of the preliminary examination to determine whether there was probable cause to seize the defendants at the time the officer called for back-up and for consideration of any special training or experience the officer may have had regarding his ability to identify the odor of marijuana in determining the weight to give his testimony.

Remanded for further proceedings.

Justice WEAVER, joined by Justices BOYLE and RILEY, concurring in part and dissenting in part, stated that the plain smell of burned or unburned marijuana provides probable cause to search a vehicle without a warrant.

When an officer smells an odor that is immediately incriminating from a lawful vantage point, the officer may rely on the sense of smell to determine whether probable cause exists to search a vehicle without a warrant. Probable cause exists to support plain view and plain feel exceptions where the incriminating character of the item to be seized is immediately apparent and turns on the degree of certainty that the item to be seized is contraband. There is no bright-line rule; rather, probable cause is determined by the circumstances of each case. In this case, the immediately apparent smell of marijuana provided a substantial basis for inferring that there was a fair probability that contraband was present in the vehicle, and the odor alone provided sufficient probable cause to search the vehicle. The distinction between burned marijuana and unburned marijuana is irrelevant to the existence of probable cause

because the odor of either, when immediately apparent, is equally incriminating.

The plain view, plain feel, and plain smell exceptions require that police officers be at a lawful observation point when they perceive the presence of contraband. In this case, a lone police officer approached the vehicle on foot to investigate the intentions of the passengers. The officer recognized the odor of burned marijuana after the defendant rolled down the window of the vehicle. Police questioning, without more, is unlikely to result in a seizure under the Fourth Amendment. The encounter, when objectively considering all the circumstances surrounding it, must convince a reasonable person that he is not free to leave. The police officer neither drew his weapon, used his vehicle to block the defendant's vehicle, nor activated his patrol car's sirens or lights. The initially consensual encounter between the officer and the defendants could not have been less threatening to the five occupants of the vehicle or less likely to invoke a perception of seizure. The resulting search and seizure was based on probable cause founded in the odor of marijuana and valid under the Fourth Amendment.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *T. Lynn Hopkins,* Assistant Prosecuting Attorney, for the people.

*Richard C. Gould* and *Melissa G. Leckie* for the defendants.

Amicus Curiae:

*Michael Thomas,* President, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

CAVANAGH, J. In this case we are asked to determine whether the smell of marijuana alone provides sufficient probable cause to conduct a search of a parked motor vehicle without a warrant. We hold that in making a determination of probable cause the smell

of marijuana is but one factor to consider in the totality of the circumstances.

I

Defendants are five African-American males who were sitting in a parked vehicle at the Anazeh Sands Pool Hall in the City of Wyoming, on March 9, 1994. Wyoming Police Officer Walendzik was on routine patrol that night. As part of his patrol, Officer Walendzik drove through the parking lot where defendants were sitting in their vehicle. There were no specific incidents reported that evening; however, the parking lot was known as a high-crime area and was frequently the site of drug and alcohol complaints.

The parking lot was a public-access lot. There were quite a few cars parked in the lot, and defendants' vehicle was parked two spaces away from another vehicle. Testimony at the preliminary examination indicated that all areas of the parking lot were well lit. In fact, the parking lot was so well lit that one officer testified that you could drive through the lot without headlights.

When Officer Walendzik drove through the parking lot around midnight on March 9, he observed the five defendants sitting in a parked vehicle with the engine off. While the officer observed that the defendants were eating Burger King sandwiches, he saw no unusual activity or furtive gestures by the occupants before he approached it. Furthermore, he did not see any smoke or marijuana in the car.

Nevertheless, he stated that his attention was drawn to the vehicle because, "[t]he vehicle was not running and there were five subjects just seated in

the vehicle, not attempting to exit the vehicle, just sitting inside of there." Officer Walendzik approached the driver's side of the vehicle on foot, and made contact with the person seated in the driver's seat. The driver rolled down the window and the officer could smell the odor of burnt marijuana coming from inside the vehicle. Officer Walendzik stated that he had no special training in the smell of marijuana and that he had not been administered a test regarding the smell of marijuana. However, he did testify that during his four-month training period he arrested people for possession of marijuana, and the other officers would point out the smell to him on many occasions.

Officer Walendzik asked the occupants of the vehicle for identification and if they had been smoking marijuana. The defendants stated that they did not have identification with them and that they were not smoking marijuana, and they accused the officer of harassing them. Officer Walendzik testified, "At that time I called dispatch and advised them that I was on a possible VCSA [violation of controlled substances act] and asked for them to send me a back-up. . . . Approximately 30 seconds later Officer Bivins arrived on the scene."

Before Officer Bivins smelled the marijuana himself, Officer Walendzik informed him of the circumstances and that he had smelled burnt marijuana emanating from the vehicle. Officer Walendzik then asked Officer Bivins to confirm the smell "and help [him] getting those subjects out of the vehicle." Officer Bivins then approached the passenger side of the vehicle. He testified that he smelled marijuana when the front seat passenger rolled down the window. Officer Bivins had no special training in the smell of

marijuana; however, in his two-year career as a police officer he came in contact with the smell of marijuana "occasionally."

After smelling the marijuana, Officer Bivins ordered the passenger, defendant Pimpleton, out of the vehicle and did a *Terry*[1] patdown. He immediately felt the outline of a revolver in the inside pocket of the defendant's coat. Officer Bivins handcuffed defendant Pimpleton, yelled to Officer Walendzik that there was a gun, and ordered the defendant to the ground. Meanwhile, Officer Walendzik went to the back of the vehicle and summoned more back-up.

At that time, one of the passengers in the back seat, defendant Vazquez, jumped out of the vehicle. Defendant Vazquez got about three or four steps away from the car before Officer Bivins tackled him and handcuffed him. Shortly thereafter, more officers arrived on the scene. They ordered the remaining defendants out of the vehicle and handcuffed them. The officers conducted a search of the vehicle, which revealed three additional handguns. The officers also found pieces of a cigar on the floorboard of the vehicle that appeared to contain marijuana. The actual presence of marijuana was never confirmed.

Defendant Taylor was charged with two counts of transporting and concealing stolen firearms, MCL 750.535b; MSA 28.803(2), and with one count of carrying a concealed weapon in an automobile, MCL 750.227; MSA 28.424. Defendants Vazquez, Morgan, and Howland each were charged with one count of transporting and concealing stolen firearms, and of carrying a concealed weapon in an automobile.

---

[1] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

Defendant Pimpleton was charged with one count of carrying a concealed weapon on his person.

A joint preliminary examination was conducted for all the defendants except Taylor. At the time of the preliminary examination, Taylor had not retained an attorney, nor had one been appointed for him. On the advice of the judge, Taylor waived his preliminary examination with the right to remand should he receive an attorney.

Officer Walendzik was the first witness to testify for the prosecution. After he relayed the events leading up to his decision to call for back-up, the attorney for defendant Howland objected to any further testimony about the evidence obtained by the officers on the basis of an illegal search of the vehicle. Defense counsel asserted that the officers did not have probable cause to order any of the defendants out of the vehicle on the basis of *People v Hilber*, 403 Mich 312; 269 NW2d 159 (1978), and *People v Chernowas*, 111 Mich App 1, 5-6; 314 NW2d 505 (1981). The judge took the objection under advisement while he gave the prosecution a fifteen-minute opportunity to call the prosecutor's office to find case law contrary to *Hilber* and *Chernowas*.

The preliminary examination continued in the meantime until the prosecution was forced to ask for an adjournment in order to bring in a key witness from Florida who was expected to testify that the weapons found in the defendants' vehicle were stolen from him. However, the attorney for defendant Vazquez objected, stating that the question "with regard to the request for an adjournment, is whether or not that's going to be necessary if the Court has heard sufficient testimony to rule on co-counsel's original

motion for suppression" of the evidence in light of *Hilber* and *Chernowas.* After hearing arguments from both sides, the judge dismissed the case, even though the preliminary examination had never been completed. The judge stated, "I do not know of any way I can get around [*Chernowas*] if I, in fact, did want to."

On appeal by the prosecutor from the magistrate's decision, the circuit court agreed that the searches were illegal and the charges were properly dismissed. A split panel of the Court of Appeals denied leave to appeal for lack of merit on the grounds presented.[2] The prosecutor appealed, and we granted leave to consider whether the odor of marijuana alone provided sufficient probable cause to search the vehicle.

II

The Fourth Amendment of the federal constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." US Const, Am IV.[3] This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by a neutral and detached judicial officer. *California v Carney,* 471 US 386, 390; 105 S Ct 2066; 85 L Ed 2d 406 (1985). In *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925), the United States Supreme Court established an exception to the warrant requirement for vehicles, recognizing

---

[2] Unpublished order, entered April 24, 1995 (Docket No. 181651).

[3] The Fourth Amendment of the federal constitution is applicable to the states through the Fourteenth Amendment. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).

a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. [*Id.* at 153.]

Thus, the Court held that a search of an automobile without a warrant, based upon probable cause to believe that the vehicle contained evidence of a crime in light of the exigency arising out of the mobility of the vehicle, did not contravene the Warrant Clause of the Fourth Amendment. *Id.* at 158-159.[4]

In *Chambers v Maroney*, 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), the United States Supreme Court refined the exigency requirement, holding that the existence of exigent circumstances justifying the search of a vehicle without a warrant was to be determined at the time the automobile is seized. The Court has held that regardless of whether the vehicle was actually moving at the time it was seized is irrelevant. "The capacity to be 'quickly moved' was clearly the basis of the holding in *Carroll*, and our cases have consistently recognized ready mobility as one of the principal bases of the automobile exception." *Carney*, 471 US 390.

As this Court noted in *People v Shabaz*, 424 Mich 42, 52; 378 NW2d 451 (1985), the Fourth Amendment

---

[4] The Michigan Constitution also prohibits unreasonable searches and seizures. Const 1963, art 1, § 11. However, the Michigan Constitution does not provide more protection than the Fourteenth Amendment under the circumstances of this case. *People v Faucett*, 442 Mich 153, 158; 499 NW2d 764 (1993).

does not guarantee freedom from all searches and seizures, rather only from those that are unreasonable. *United States v Sharpe*, 470 US 675; 105 S Ct 1568; 84 L Ed 2d 605 (1985). However, the Fourth Amendment applies to all seizures, including those that involve only a brief detention, short of a traditional arrest. *United States v Brignoni-Ponce*, 422 US 873, 878; 95 S Ct 2574; 45 L Ed 2d 607 (1975).

In *Shabaz*, we noted that in *Florida v Royer*, 460 US 491, 497-498; 103 S Ct 1319; 75 L Ed 2d 229 (1983), Justice White, writing for a plurality of the Court, stated:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. . . . Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. . . . The person approached, however, need not answer any questions put to him; indeed, he may decline to listen to the questions at all and may go on his way. . . . *He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.* [Emphasis added; citations omitted.]

Determining the point when the seizure took place is crucial to a Fourth Amendment inquiry because it is at that point that the officer must have probable cause.

III

Officer Walendzik did not violate the Fourth Amendment by merely approaching the vehicle in a public place and asking defendants if they were willing to answer some questions. While this initial encounter was justified as a mere inquiry, and thus was reasonable without a showing of probable cause, the level of intrusion upon the defendants escalated to a seizure requiring probable cause when Officer Walendzik summoned dispatch for back-up.

As stated by Justice White in *Florida v Royer* at 498, a person approached by an officer "may not be detained even momentarily without reasonable, objective grounds for doing so . . . ." In this case, Officer Walendzik testified that when defendants answered that they had not been smoking marijuana, he "called dispatch and . . . asked for them to send me a back-up." Furthermore, Officer Walendzik testified that when Officer Bivins arrived on the scene approximately thirty seconds later, he wanted Officer Bivins to "help [him] get[] those subjects out of the vehicle." The testimony of Officer Walendzik demonstrates that the mere inquiry had progressed to a seizure. Not only were the defendants detained for the thirty seconds it took back-up to arrive, Officer Bivins did not even have the opportunity to approach the vehicle before Officer Walendzik told him he needed help getting the suspects out of the vehicle. Therefore, it is clear that Officer Walendzik was not only calling for back-up to confirm his suspicions about the smell; rather, he was calling for back-up so that he could have assistance in ordering the defendants out of the car. This amounted to a seizure, the justification for which requires probable cause.

IV

This Court has followed federal precedent in adopting the plain view and plain touch exceptions to the warrant requirement. See, e.g., *People v Champion*, 452 Mich 92; 549 NW2d 849 (1996). The plain view doctrine allows police officers to seize items in plain view without first obtaining a search warrant. *Id.* at 101. The plain touch exception allows an object felt during an authorized patdown search to be seized without a warrant if the officer develops probable cause to believe the item felt is contraband. *Id.* at 105-106.

This Court, in adopting the plain feel exception in *Champion* stated:

> We emphasize that courts applying the plain feel exception must appreciate the totality of the circumstances in the given case. [*Minnesota v Dickerson*, 508 US 366; 113 S Ct 2130; 124 L Ed 2d 334 (1993)] requires an in-depth examination of probable cause. We therefore caution that our holding is limited to the facts before us. . . . It is only under the totality of the circumstances before us, i.e., the defendant's furtive behavior, his refusal to remove his hands from his sweatpants, the officer's recognition of defendant, and his knowledge of defendant's past involvement in drug crimes, that we find that removal of this particular pill bottle was authorized. [*Id.* at 112-113.]

Later, this Court repeated, "We again emphasize that it is only under the totality of the circumstances that seizure of this pill bottle is authorized." *Id.* at 113.

In this case we consider the plain smell exception to the warrant requirement. In *Taylor v United States*, 286 US 1, 6; 52 S Ct 466; 76 L Ed 951 (1932), the United States Supreme Court was faced with the question whether smell alone provides probable

cause to search the home of an individual. While we recognize that in this case the search was not conducted in a home, but rather was a search of a vehicle, the Court's analysis is equally applicable.[5] The Court stated,

---

[5] In the case of a vehicle, because of the reduced expectation of privacy and the ready mobility of the vehicle, a search without a warrant has been found to be reasonable. The consequence of that reduced privacy has been to allow a search of the vehicle without a warrant, but only if based upon probable cause. The United States Supreme Court has never held that there should be two standards for probable cause: one lesser standard for vehicles and one greater standard for homes and buildings. In fact, the Court refers to only one standard for probable cause.

In *California v Carney, supra* at 392-394, the Court stated:

[T]he exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met. . . . Under the vehicle exception to the warrant requirement, "[only] the prior approval of the magistrate is waived; the search otherwise [must be such] as the magistrate could authorize." [Citation omitted; bracketed words supplied.]

Furthermore, in *Almeida-Sanchez v United States,* 413 US 266, 269; 93 S Ct 2535; 37 L Ed 2d 596 (1973), the Court stated, "Automobile or no automobile, there must be probable cause for the search."

Finally, in *South Dakota v Opperman,* 428 US 364, 386; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), Justice Marshall, in his dissent, recognized the principle that there is only one standard for determining probable cause. He stated:

The Court correctly observes that some prior cases have drawn the distinction between automobiles and homes or offices in Fourth Amendment cases; but even as the Court's discussion makes clear, the reasons for distinction in those cases are not present here. Thus, *Chambers v Maroney,* 399 US 42 (1970), and *Carroll v United States,* 267 US 132 (1925), permitted certain probable-cause searches to be carried out without warrants in view of the exigencies created by the mobility of automobiles, but both decisions reaffirmed that the standard of probable cause necessary to authorize such a search was no less than the standard applicable to search of a home or office. *Chambers* at 51; *Carroll* at 155-156.

Therefore, while a person in a vehicle may have a diminished expectation of privacy, the fact remains that a search of the vehicle without a warrant

> Prohibition officers may rely on a distinctive odor as a
> physical fact indicative of possible crime; but its presence
> alone does not strip the owner of a building of constitu-
> tional guarantees against unreasonable search. [*Id.* at 6.]

Later, in *Johnson v United States*, 333 US 10, 13; 68
S Ct 367; 92 L Ed 436 (1948), the Court reiterated
that *Taylor* held

> only that odors alone do not authorize a search without
> warrant. If the presence of odors is testified to before a
> magistrate and he finds the affiant qualified to know the
> odor, and it is one sufficiently distinctive to identify a for-
> bidden substance, this Court has never held such a basis
> insufficient to justify issuance of a search warrant. Indeed it
> might very well be found to be evidence of most persuasive
> character.

Because the United States Supreme Court has held
that odor alone is not sufficient to authorize a search
of a building without a warrant, we hold that odor
alone is not sufficient probable cause to search a
vehicle. Rather, as these cases indicate, odor should
be but one factor to consider in a totality of the
circumstances.

Using the totality of the circumstances test to
determine whether there was probable cause
advances a concern associated with the reliability of
smell in general. As noted by the dissent, we
acknowledge that there is a difference between the
plain view of an object and the plain touch and smell.
With sight, the item to be seized is immediately pres-
ent and no further searching is required. However,

---

still must be based on probable cause, the same probable cause as is
needed to obtain a warrant to search a home.

the senses of touch and smell establish the *possible* presence of contraband, the confirmation of which requires further searching. With the sense of smell, even more caution is required than with the senses of sight and touch. When an officer sees or feels contraband, he knows it is present and he can tell who has possession of that contraband. The same is not true with the sense of smell. The smell of smoke, whether from tobacco or from marijuana, can linger and can attach to someone coming into a vehicle, regardless of whether that person ever had possession of it, or whether it was smoked in that vehicle.

It is precisely for this reason that the Court should be even more cautious when basing probable cause on a smell. By requiring the officer to use smell as one factor in a totality of circumstances, it protects the rights of a defendant against unreasonable searches and seizures. Therefore, on the basis of both federal and state law, officers may not seize a person on the basis of odor alone.[6]

We hold that the smell of marijuana is but one factor to consider in the totality of the circumstances in determining whether probable cause exists to conduct a search of a parked vehicle without a warrant.

V

Finally, the preliminary examination in this case was never completed because the trial judge dis-

---

[6] We note that the trial judge based his determination in this case on our decision in *Hilber* and the decision of the Court of Appeals in *Chernowas*, which addressed the distinction between the odor of burned and unburned marijuana. However, *Hilber* did not garner a majority of this Court. Therefore, we expressly decline to adopt the distinction between unburned and burned marijuana as the basis for our decision today.

missed the charges against the defendants. Typically, when reviewing a decision from a preliminary examination, the preliminary examination has been fully completed before any decision is appealed. However, it is clear from the record that the preliminary examination in this case was ended prematurely when the trial judge held that he was bound by *Hilber* and *Chernowas*. Because we have expressly declined to adopt the reasoning from *Hilber* and *Chernowas*, we now remand the case to the trial court for continuation of the preliminary examination. It is up to the trial judge to make the determination whether there was probable cause to seize the defendants at the time Officer Walendzik called for back-up. In so doing, and in accordance with United States Supreme Court case law, the trial judge should consider the special training or experience of the officer regarding his ability to identify the odor of marijuana in determining the weight to give his testimony. Furthermore, probable cause must be based on a totality of the circumstances, in which odor is but one factor to consider.

Because we sit as a reviewing court only, we cannot make the initial determination whether there was probable cause in this case. "[A] reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers. A trial judge views the facts of a particular case in light of the distinctive features and events of the community . . . ." *Ornelas-Ledesma v United States*, 517 US 690, ___; 116 S Ct 1657; 134 L Ed 2d 911, 920-921 (1996). We should not make a determination that the decision of

the trial judge was clearly erroneous until (1) he has heard all the evidence and completed the preliminary examination, and (2) he has made his ruling.

Remanded for further proceedings.

Mallett, C.J., and Brickley and Kelly, JJ., concurred with Cavanagh, J.

Weaver, J. (*concurring in part and dissenting in part*). I concur with the majority's reinstatement of the charges against these defendants, but disagree with the majority's reasoning. In this case, we consider whether the Fourth Amendment permits a search of a vehicle when the search is premised on a police officer's perception of an odor of burned marijuana emanating from the vehicle. I disagree with the majority holding that probable cause must be determined from the totality of the circumstances. Instead I would hold that the plain smell of burned or unburned marijuana provides probable cause to search a vehicle without a warrant.

I agree with the majority that at the time the police officer perceived the odor of burned marijuana, no seizure had occurred under the Fourth Amendment.

I

In addition to the facts as presented by the majority, I note that testimony from the preliminary hearing indicates that there were two or three *arrests* made each night for alcohol and drugs in the parking lot where the arrests occurred. Further, Sergeant Theodore Kneibel, who arrived less than a minute after Officer Walendzik called for assistance, testified that when he approached the defendants' open vehicle he detected the "strong pungent odor" of marijuana. Sim-

ilarly, Officer Brian Hudenko, who arrived shortly after Sergeant Kneibel, testified that there was a "[v]ery strong odor" of marijuana in the Blazer.

In addition to a loaded revolver seized from defendant Pimpleton, a subsequent search of the defendants and their vehicle revealed, among other things, three additional loaded handguns, a 9-mm round, pagers, and three face masks.

II

The Fourth Amendment of the United States Constitution is a guarantee against unreasonable searches and seizures. US Const, Am IV.[1] Searches conducted without warrants are presumed to be unreasonable. See, e.g., *Coolidge v New Hampshire*, 403 US 443, 454-455; 91 S Ct 2022; 29 L Ed 2d 564 (1971). The remedy for a Fourth Amendment violation is suppression of the unlawfully obtained evidence. *Weeks v United States*, 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914).[2]

A

There are narrowly drawn exceptions to the Fourth Amendment warrant requirement. These exceptions attempt to balance the tension between a police officer's duty to protect the public and an individual's right under the Fourth Amendment to personal

---

[1] The Fourth Amendment was made applicable to the states through the Fourteenth Amendment. *Mapp v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).

[2] The Michigan Constitution also protects against unreasonable searches and seizures. Const 1963, art 1, § 11. However, the Michigan Constitution does not provide more protection than the Fourth Amendment under the circumstances of this case. *People v Faucett*, 442 Mich 153, 158; 499 NW2d 764 (1993).

security. Relevant to the search of the vehicle without a warrant in this case are exceptions based on a police officer's sensory perception of contraband. This Court has followed federal precedent by adopting both the plain view[3] and plain feel[4] exceptions to the warrant requirement.

The plain view exception permits police officers to seize items of an immediately apparent, incriminating character without a warrant when the officer is in a lawful position from which to view the item, *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996). " '[I]mmediately apparent' means that without further search the officers have 'probable cause to believe' the items are seizable." *Id.*, p 102, citing *Texas v Brown*, 460 US 730, 741-742; 103 S Ct 1535; 75 L Ed 2d 502 (1983). The plain feel exception similarly allows seizure without a warrant of objects discovered during a weapons patdown when the identity of the object is immediately apparent and the officer has probable cause to believe the object is contraband. *People v Champion, supra*, p 101.

The federal courts and an overwhelming majority of state courts hold that probable cause may also be based on distinctive odors. See, e.g., *United States v Haley*, 669 F2d 201 (CA 4, 1982); *United States v Miller*, 812 F2d 1206 (CA 9, 1987); *United States v Morin*, 949 F2d 297 (CA 10, 1991). This Court has not expressly held that the sense of smell can support a finding of probable cause; however, we noted in *People v Faucett*, 442 Mich 153, 156, n 3; 499 NW2d 764

---

[3] *Arizona v Hicks*, 480 US 321; 107 S Ct 1149; 94 L Ed 2d 347 (1987); *People v Cooke*, 194 Mich App 534; 487 NW2d 497 (1992).

[4] *People v Champion*, 452 Mich 92; 549 NW2d 849 (1996). *Minnesota v Dickerson*, 508 US 366; 113 S Ct 2130; 124 L Ed 2d 334 (1993).

(1993), that the odor of fresh marijuana could support a finding of probable cause.

I recognize that there is an apparent difference between the plain view exception and the plain feel and smell exceptions to the warrant requirement. With sight, the item to be seized is immediately present and no further search for contraband is required. However, the senses of touch and smell establish the possible presence of contraband, the confirmation of which requires further "searching." This issue was addressed by the United States Supreme Court in *Minnesota v Dickerson*:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context. [508 US 366, 375-376; 113 S Ct 2130; 124 L Ed 2d 334 (1993).]

*Dickerson* does not require consideration of the totality of the circumstances to establish probable cause under the plain feel exception. Similarly, when an officer smells an odor that is immediately incriminating from a lawful vantage point,[5] the officer may rely on his sense of smell to determine whether probable cause exists to search a vehicle without the circumspection of a neutral magistrate. Excessively speculative searches are deterred by the Fourth Amendment requirement that the officer have probable cause to believe contraband is present. *Dickerson*, 508 US 376.

---

[5] See discussion in part III regarding lawful vantage point.

B

Probable cause exists to support the plain view[6] and plain feel[7] exceptions where the incriminating character of the item to be seized is immediately apparent. "[T]he mere fact that the items in question came lawfully within the officer's plain view . . . alone cannot supplant the requirement of probable cause." *Arizona v Hicks*, 480 US 321, 327; 107 S Ct 1149; 94 L Ed 2d 347 (1987).

There is probable cause to issue a search warrant where there is a "substantial basis" for inferring a "fair probability" that contraband or evidence of a crime will be found in a particular place. *People v Russo*, 439 Mich 584, 604; 487 NW2d 698 (1992). Although *Russo* involved a search warrant, the analysis is equally applicable to the question of probable cause in a search conducted without a warrant. See *People v Champion, supra*, p 113.

The existence of probable cause turns on the degree of certainty held by the police officer that the item to be seized is contraband. There is no bright-line rule; rather, the existence of probable cause is determined by the circumstances of each case. *Russo, supra*, pp 606-607. Because of the substantially similar nature of the sensory perceptions as foundations for probable cause, I would apply the same probable cause analysis to the plain smell exception.

In the instant case, Officer Walendzik testified that the odor of marijuana in the defendants' vehicle was

---

[6] *Horton v California*, 496 US 128; 110 S Ct 2301; 110 L Ed 2d 112 (1990); *People v Cooke*, n 3 *supra*.

[7] *People v Champion, supra*, p 105.

"very, very strong . . . ."[8] Officer Walendzik was not required to ignore this or any other information that was apparent through his senses.[9] I would hold that the immediately apparent smell of marijuana provided a substantial basis for inferring that there was a fair probability that contraband was present in the vehicle. I note that probable cause in this case was further supported by the driver's failure to produce identification when requested and the occupants' hostile response to the officer's questions. However, the odor alone provided sufficient probable cause to search the vehicle.

It was only after Officer Walendzik's perception of marijuana was confirmed by Officer Bivins that defendant Taylor was asked to get out of his vehicle and submit to a protective patdown for weapons. Simultaneously, Officer Bivins made a similar request of defendant Pimpleton and found a loaded handgun on him. Because the search was based on probable cause, the seizure was legal.

I would hold that the odor of marijuana emanating from the vehicle provided probable cause to believe that there was a present violation of the controlled substance law.[10]

---

[8] Although the officer had been on the force only one year, he had encountered marijuana on numerous prior occasions and was able to distinguish a "slight odor" from a "very strong odor."

[9] Officer Bivins testified that he also detected the strong odor of marijuana when defendant Pimpleton rolled down the front passenger window. The perceptions of Officers Walendzik and Bivins were verified by Sergeant Kneibel and Officer Hudenko, who assisted in the arrest of the defendants and described the odor of marijuana in the Blazer as "strong pungent" and "very strong," respectively.

[10] The subsequent patdown of defendants Taylor and Pimpleton led to the discovery of a concealed weapon, which, along with other factors, including defendant Vazquez' attempt to flee, further supported probable cause for the search of the vehicle and the rear-seat passengers.

C

In so holding, rather than simply declining to adopt
the reasoning of *People v Hilber*, 403 Mich 312; 269
NW2d 159 (1978) and *People v Chernowas*, 111 Mich
App 1; 314 NW2d 505 (1981), I would address the
continuing viability of a distinction in Michigan case
law between the odor of unburned marijuana and the
odor of burned marijuana as a basis for probable
cause to search a vehicle without a warrant. This dis-
tinction was first articulated in Michigan in the plural-
ity opinion of *People v Hilber, supra*.[11] In *Hilber*, two
justices reasoned that the odor of smoked marijuana
does not provide probable cause for a vehicle search
separate and apart from a search of the smoker and
the vehicle he is occupying or has just occupied, fol-
lowing his reasonable identification as the smoker.[12]

---

[11] In *Hilber*, two police officers stopped the defendant's vehicle for
speeding. While asking the defendant for his driver's license and registra-
tion, one of the officers smelled the odor of burned marijuana. After
examining the documents that the defendant furnished, the officer
inquired whether there was marijuana in the vehicle. The defendant got
out of the vehicle and handed the officer a pack of cigarettes from the
dashboard. They appeared to be marijuana cigarettes, and the defendant
was arrested. During the subsequent search of his vehicle, the officers
found marijuana paraphernalia, amphetamines, a container of cigarette
butts, and a paper bag containing five pounds of marijuana.

The circuit judge suppressed the marijuana cigarettes in *Hilber* on the
ground that they had been obtained in violation of *Miranda v Arizona*,
384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). However, the judge said
that the odor of marijuana had justified the vehicle search without a war-
rant and denied the motion to suppress the other evidence. The Court of
Appeals said that all the evidence should have been suppressed, and
reversed the defendant's conviction. *People v Hilber*, 69 Mich App 664; 245
NW2d 156 (1976).

A majority of this Court agreed in two separate opinions that, although
the question whether the odor of burned marijuana provides probable
cause for an arrest or search depends on the circumstances of each case,
the evidence was properly suppressed in *Hilber*.

[12] These justices explained that although the arresting officer testified
that he smelled " 'a distinct, strong odor of marijuana' " in the defendant's

Relying on the reasoning of only two justices, a Court of Appeals panel in *Chernowas* found that *Hilber* stood for the proposition that the odor of marijuana smoke by itself does not constitute probable cause to search a vehicle.[13]

I would overrule *Chernowas*, and clarify that the distinction articulated in *Hilber* between the smell of burned and unburned marijuana was not controlling.[14] Further, I would find that the purported distinction is irrelevant to the existence of probable cause because the odor of unburned and the odor of burned mari-

---

car, this did not constitute sufficient probable cause that the defendant was the smoker or that there was unsmoked marijuana in the car. 403 Mich 321. The officer had not been trained in determining how long the residual odor of marijuana lingers, and his statements in this regard were too indefinite and indeterminate.

In the concurring opinion, two justices said that an analysis of the particular circumstances in *Hilber* was unnecessary because the cigarettes were seized illegally, and any evidence seized afterward must be suppressed as fruit of the poisonous tree under *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

The three dissenting justices in *Hilber* would have found probable cause for a vehicle search on the basis of the odor of marijuana, without regard to whether it was unsmoked, burning, burned, or in some other form.

[13] In *Chernowas*, two police officers stopped the defendants' vehicle for excessive noise and a missing brake light. The driver met one officer at the rear of the vehicle. The officer testified that he detected the "strong odor" of marijuana smoke. When the officer asked the driver whether he had been smoking marijuana, the driver answered affirmatively. However, he said that he did not think there was any more marijuana in the vehicle. The second officer asked the two passengers to produce identification. When they failed to comply, he asked them to get out of the car. He then looked into the vehicle and spotted a paper bag. Upon opening the bag, he saw what he believed to be marijuana. He also saw the butt of a gun protruding from under the front-passenger seat. Two guns were seized from under the seat, and the defendants were arrested. A subsequent protective patdown revealed a loaded gun on one of the passengers.

[14] I note that the smell of *burning* marijuana, when immediately apparent, also provides probable cause to justify a search.

juana, when immediately apparent, are equally incriminating.[15]

### III

The plain view, plain feel, and plain smell exceptions share a threshold requirement that police officers be at a lawful observation point when they perceive the presence of contraband. *Horton v California*, 496 US 128; 110 S Ct 2301; 110 L Ed 2d 112 (1990) (view); *Minnesota v Dickerson, supra* (feel); *United States v Johnston*, 497 F2d 397 (CA 9, 1974) (smell). In this case, the vantage point from which Officer Walendzik recognized the odor of burned marijuana was at the driver's door of the vehicle after defendant Taylor rolled down his window. The preliminary question under the Fourth Amendment is whether this initial encounter amounted to a seizure.

Police questioning, without more, is unlikely to result in a seizure under the Fourth Amendment. *Immigration & Naturalization Service v Delgado*, 466 US 210, 216; 104 S Ct 1758; 80 L Ed 2d 247 (1984). *Terry v Ohio*, 392 US 1, 19, n 16; 88 S Ct 1868; 20 L Ed 2d 889 (1968), defines seizure as a "physical force or show of authority [that] has in some way restrained the liberty of a citizen . . . ." Not all encounters between police officers and citizens rise to the level of a seizure.[16] The encounter must, when

---

[15] The State of Montana is the only state that expressly retains this distinction. *State v Schoendaller*, 176 Mont 376; 578 P2d 730 (1978).

[16] One federal district court noted:

> In the years since *Terry* . . . the Court in case after case of street encounter has had to resolve the "tensions involved" in protecting both the public's interest in safety and the individual's right of personal security.

objectively considering all the circumstances surrounding it, convince a reasonable person that he is not free to leave. *United States v Mendenhall*, 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980).[17] The fact that most citizens will oblige a police officer's request does not transform an encounter into a seizure. *Immigration & Naturalization Service v Delgado, supra.*

As stated in *Florida v Royer*, 460 US 491, 497; 103 S Ct 1319; 75 L Ed 2d 229 (1983):

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter

---

[T]he Court increasingly has opted in the favor of public safety. It has done so by electing to raise the threshold of what is meant by a "seizure," rather than by deciding to lower the standard for the "minimal level of objective justification [required] to validate the detention or seizure." In sum, in the interest of permitting the police to do their job, consistent with individual rights, the Court apparently has found it preferable to deem nonintimidating police questioning a "consensual encounter," not a seizure, rather than to risk justifying seizures based on marginally suspicious circumstances which are capable of innocent explanation. [*United States v Barnes*, 496 A2d 1040, 1044-1045 (DC App, 1985) (citations omitted).]

[17] In *Florida v Royer*, 460 US 491; 103 S Ct 1319; 75 L Ed 2d 229 (1983), Drug Enforcement Administration agents approached the defendant and requested identification and to see his airline ticket. The United States Supreme Court held that this did not amount to a seizure. *Id.*, p 501. However, where two police officers physically detained a defendant to determine his identity absent some reasonable suspicion, there was an unreasonable seizure. *Brown v Texas*, 443 US 47; 99 S Ct 2637; 61 L Ed 2d 357 (1979).

into a seizure requiring some level of objective justification.
[Citations omitted.]

A seizure may be indicated by the "threatening presence of several officers . . . some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall, supra,* p 554. However, there is no Fourth Amendment proscription against a police officer approaching a person in a public place and putting questions to him if he is willing to listen. *Royer, supra.*

In this case, a lone police officer approached the vehicle on foot to investigate the intentions of the passengers. I agree with the majority that Officer Walendzik did not violate the Fourth Amendment by approaching the vehicle and putting questions to the occupants. Given the fact that two or three arrests were made in the parking lot each night, it would have been considered poor police work had Officer Walendzik chosen not to investigate this vehicle. Officer Walendzik's weapon was not drawn, and he had activated neither his vehicle's siren nor its flashing lights. There is no evidence that the defendants' vehicle was blocked by the officer's vehicle and there was no form of pursuit. Furthermore, I would note that the defendants' expectation of privacy was reduced because they were in a vehicle. *United States v Ross,* 456 US 798; 102 S Ct 2157; 72 L Ed 2d 572 (1982).

The circumstances surrounding Officer Walendzik's initial encounter with the defendants was substantially less intimidating than the encounters held not to be seizures in other cases. For example, in *People v*

*Mamon*, 435 Mich 1; 457 NW2d 623 (1990), the active pursuit of the defendant by two police officers on foot did not constitute a seizure. Similarly, where two police officers driving a marked police car briefly accelerated to follow the defendant who was on foot, the United States Supreme Court held that the police actions, standing alone, did not amount to a seizure. *Michigan v Chesternut*, 486 US 567, 574; 108 S Ct 1975; 100 L Ed 2d 565 (1988). No seizure occurred when a police officer saw a person asleep or unconscious in a car and tapped on the window to awaken the subject then asked for identification. *Purce v United States*, 482 A2d 772 (DC App, 1984).

The initial encounter between Officer Walendzik and the defendants could not have been less threatening to the five occupants of the vehicle or less likely to invoke a perception of seizure.

IV

This case is an example of an initially consensual encounter resulting in a search and seizure. Because the search and seizure was based on probable cause founded in the odor of marijuana, I would hold that it was valid under the Fourth Amendment.

BOYLE and RILEY, JJ., concurred with WEAVER, J.