# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 22, 2018

Plaintiff-Appellant,

v

No. 336268
Oakland Circuit Court
LC No. 2016-257804-FH

JAMES PATRICK KELEL, JR.,

Defendant-Appellee.

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant was charged with operating a vehicle while intoxicated, MCL 257.625(1)(a), possession of a controlled substance, MCL 333.7403(2)(b)(*ii*), and operating a vehicle on a suspended or revoked license, MCL 257.904(3)(a). Defendant moved to suppress all evidence derived from his arrest arguing that his arrest stemmed from an unlawful search and seizure. The trial court granted defendant's motion and dismissed his charges with prejudice. The prosecution now appeals. We conclude that the officers had grounds to conduct a *Terry*[1] stop, and so reverse.

## I. BACKGROUND

This case arises out of an arrest that occurred early in the morning on July 28, 2012. At approximately 12:35 a.m., Police Officer Jonathan Jacob was patrolling an industrial part of the town in an unmarked vehicle on a dirt road when he observed defendant's vehicle, driving 25 to 30 miles below the speed limit, turning into a closed landscaping business. Officer Jacob called for backup, and approximately 10 minutes later, a uniformed officer arrived in a marked police car. The two officers entered the landscaping business and found defendant standing outside his vehicle in the parking lot. As the officers approached, defendant told them that they were on private property, that he was an employee of the business, and asked them to leave. When the officers approached defendant, he showed them an identification card indicating that he was an employee of the business, and explained that he was picking up some equipment for the morning. However, while engaging in this interaction, Officer Jacob noticed that defendant was speaking slowly, almost slurring his words, and was visibly shaking. The officer concluded that

---

[1] *Terry v Ohio*, 392 US 1, 27; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

-1-

defendant was under the influence of drugs or alcohol. After defendant failed several of the standard sobriety tests, he was placed under arrest for impaired driving. His car was searched thereafter, and approximately 12 hydrocodone tablets were found in a prescription bottle in defendant's vehicle.[2]

Defendant was ultimately charged with operating a vehicle while intoxicated, possession of a controlled substance, and operating a vehicle on a suspended or revoked license. Defendant then moved to suppress all evidence stemming from his arrest on the grounds that the evidence was obtained during an unconstitutional search and seizure. The trial court conducted an evidentiary hearing after which she granted the motion to suppress and dismissed the charges.

## II. FOURTH AMENDMENT ISSUES

The prosecution raises three issues on appeal. First, it asserts that the defendant was not subject to a seizure and that the officers' initial contact with the defendant did not rise to the level of a *Terry* stop. Second, that defendant lacks standing to raise the Fourth Amendment because it occurred on someone else's private property. Third, that the officers had proper grounds to conduct a *Terry* stop. We reject the prosecution's first two arguments, but agree that there were sufficient grounds for a *Terry* stop, and so reverse.

## A. WAS THERE A SEIZURE?

The prosecution first argues that defendant's Fourth Amendment rights were not implicated because the encounter in this case was a "first tier" police encounter that occurred in a public place and did not rise to the level of a seizure. We disagree.[3]

" 'The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures.' " *People v Woodard*, ___ Mich ___, ___; ___ NW2d ___ (2017); slip op at 3, citing *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). "[A] search for the purpose of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Antwine*, 293 Mich App 192, 195; 809 NW2d 439 (2011) (quotation marks and citation omitted). "A 'seizure' occurs within the meaning of the Fourth Amendment if, in view of all the circumstances surrounding an encounter

---

[2] Defendant has asserted throughout that he possessed the pills pursuant to a valid prescription. Whether defendant's possession was illegal is a matter of proofs to be determined by the fact finder after hearing the evidence or by the court pursuant to a directed verdict motion, if no such proofs are presented at trial.

[3] A trial court's ruling on a motion to suppress evidence is reviewed de novo, and its factual findings are reviewed for clear error. *People v Barbarich*, 291 Mich App 468, 471; 807 NW2d 56 (2011). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lanzo Const Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

with the police, a reasonable person would have believed that the person was not free to leave." *People v Shankle*, 227 Mich App 690, 693; 577 NW2d 471 (1998) (citation omitted).

A "first tier" police-citizen encounter "consists of an officer asking a person questions in a public place." *People v Shabaz*, 424 Mich 42, 56; 378 NW2d 451 (1985). "When an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person's liberty, and the person is not seized." *People v Jenkins*, 472 Mich 26, 33; 691 NW2d 759 (2005).

We agree with the trial court that the encounter occurred in a private place, and not in a public place as the prosecution argues. "A 'public place' is generally understood to be any place that is open to or may be used by the members of the community, or that is otherwise not restricted to the private use of a defined group of persons." *People v Carlton*, 313 Mich App 339, 348; 880 NW2d 803 (2015) (citation omitted). The prosecution relies on *People v Taylor*, 454 Mich 580; 564 NW2d 24 (1997), overruled in part on other grounds by *People v Kazmierczak*, 461 Mich 411; 605 NW2d 667 (2000), and *Shankle*,[4] for the contention that under certain circumstances, privately owned property can constitute a public place within the meaning of the Fourth Amendment. In *Taylor*, a police officer approached a defendant in the parking lot of a privately owned pool hall. *Taylor*, 454 Mich at 583. The parking lot was "well lit," and accessible to the public. *Id*. The Michigan Supreme Court found that the officer did not violate the defendant's Fourth Amendment rights "by merely approaching the vehicle in a public place and asking [the] defendants if they were willing to answer some questions." *Id*. at 590.[5]

In this case, and unlike in *Taylor*, Officer Jacob testified that he followed defendant into a closed landscaping business that was "dark," and "unlit." Officer Jacob noted that the business was situated on private property, and that the property was gated. In fact, the gate was closed prior to defendant entering the property. The property necessarily was *not* a place that was open and accessible to the community, and was "restricted to the private use of a defined group of persons." See *Carlton*, 313 Mich App at 348. Accordingly, we disagree with the prosecution's contention that this particular police encounter occurred in a "public place."

We also disagree with the prosecution's argument that the encounter did not constitute a seizure because a reasonable person in defendant's position would have felt free to leave. We conclude that intimidating circumstances existed that would have led a reasonable person to believe he was not free to leave, especially where the officers did not comply with defendant's request to leave the premises. "[A] police approach for questioning on the street amounts to a consensual encounter, not a *Terry* stop, unless there exist intimidating circumstances leading the person to reasonably believe he was not free to leave or the person rebuffs the police officer by

---

[4] *People v Shankle*, 227 Mich App 690, 693; 577 NW2d 471 (1998).

[5] In *Shankle*, an officer approached the defendant, who was parked on the edge of a private driveway. *Shankle*, 227 Mich App at 692. However, this Court was not focused on whether the driveway was considered a public place, but rather, on the lack of intimidating circumstances that might have compelled the defendant to cooperate. *Id*. at 697-698.

refusing to answer and walking away." *Shankle*, 227 Mich App at 695-696 (quotation marks and citations omitted).

In the present case, when the officers approached defendant, it was after midnight and the property was dark and unlit. The officers, who outnumbered defendant, approached with flashlights aimed at defendant, and with badges visible. Moreover, the backup officer approached in full police uniform from a marked police car. In fact, Officer Jacob testified that he called for backup because he wanted an "obvious uniformed presence," which he admitted at the evidentiary hearing created a "show of police authority." Further, Officer Jacob admitted that in order for defendant to leave the encounter, defendant would have had to enter his vehicle, maneuver around vehicles on either side of him, maneuver around Officer Jacob and the backup officer behind him, and finally, drive around both of the officers' vehicles. Considering the totality of the circumstances, a reasonable person in defendant's position would not have felt free to leave, and accordingly, this police encounter constituted a seizure.

## B. STANDING

The prosecution next argues that defendant did not have standing to challenge Officer Jacob's decision to enter the property on Fourth Amendment grounds.

The prosecution's argument conflates the "search" of *property* in which an individual *may* have a reasonable expectation of privacy with the "seizure" of a *person* without reasonable suspicion or probable cause. See *People v Houze*, 425 Mich 82, 85; 387 NW2d 807 (1986) (holding that the "Fourth Amendment protects people-and not simply areas") (quotation marks and citation omitted). "[A] defendant is said to have 'standing' to challenge a search or seizure if, under the totality of the circumstances, he has a subjective expectation of privacy in the object of the search or seizure and the expectation of privacy is one that society is prepared to recognize as reasonable." *People v Zahn*, 234 Mich App 438, 446; 594 NW2d 120 (1999). In this case, defendant might not have had a reasonable expectation of privacy in the object of the parking lot itself, but the same does not dispense with defendant's right to be free from unreasonable seizures of his person. Therefore, we reject this argument.

## C. WAS THERE REASONABLE, ARTICULABLE SUSPICION THAT DEFENDANT HAD COMMITTED OR WAS ABOUT TO COMMIT A CRIME?

The fact that the officers subjected defendant to a *Terry* stop does not automatically lead to the conclusion that the stop violated the Fourth Amendment. The issue is whether they had a reasonable suspicion to stop defendant. See *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

> [I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [*Terry v Ohio*, 392 US 1, 27; 88 S Ct 1868; 20 L Ed 2d 889 (1968).]

-4-

"Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances." *People v Kavanaugh*, 320 Mich App 293, 301; ___ NW2d ___ (2017).

The prosecution points to the following facts in order to demonstrate reasonable suspicion. First, that this was a "directed patrol" and that there had recently been burglaries in the area. Defendant presented evidence that there had not been criminal activity in the area and the trial court agreed. However, the court did not conclude that the officer's testimony that he was on a "directed patrol" was not credible, and thus it can be considered. Second, that defendant was driving unusually slowly on an empty, unlit dirt road at about 12:30 a.m. Third, that defendant entered a business that was closed and did so at a time during which it was very unlikely that business would be conducted and remained there for over 10 minutes, which was when the police entered. We conclude that given the facts of this case, driving unusually slowly in an isolated area and then entering into a closed and gated business in the early morning hours was sufficient to reasonably suspect that defendant might be engaged in criminal activity and to conduct a brief investigatory stop. The totality of the circumstances supports the conclusion that the police officers were not merely acting on a hunch or an inchoate suspicion. Rather, they had an articulable and reasonable suspicion that defendant had been or was about to be engaged in criminal activity. *People v Nelson*, 443 Mich 626, 630; 505 NW2d 266 (1993). Accordingly, the trial court improperly concluded that these circumstances did not support a reasonable suspicion.[6]

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[6] Because we concluded that the police officer had reasonable suspicion to stop defendant, we need not address the prosecution's inevitable discovery argument.