STATE of Indiana, Appellant–Plaintiff,

v.

Seth CARLSON, Appellee–Defendant.

No. 41A01–0105–CR–192.

Court of Appeals of Indiana.

Jan. 18, 2002.

Steve Carter, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Daniel J. Paul, Williams Hewitt & Robbins, LLP, Greenwood, IN, Michael L. Hanley, Vernon J. Petri & Associates, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff the State of Indiana appeals the trial court's grant of appellee-defendant Seth Carlson's motion to suppress. More specifically, the State contends that the trial court erred in suppressing the evidence of marijuana in the vehicle because: 1) the police had probable cause to search the vehicle, and 2) the police searched the trunk in accordance with the "inventory-search" exception to the Fourth Amendment warrant requirement.

### FACTS

On the evening of May 8, 2000, the Johnson County Sheriff's Office received an anonymous phone call reporting that a brown Audi automobile with Alabama license plates was driving erratically on Interstate 65 South and was exiting onto Whiteland Road. The Johnson County Sheriff's Office issued a dispatch giving the vehicle's description, license plate number, and location. Indiana State Trooper Harris Smith and Whiteland Police Department Sergeant Kerry Hamilton heard the dispatch and drove to the area. When Sergeant Hamilton arrived, he saw a brown Audi with an Alabama license plate parked at the Pilot Truck Stop. Sergeant Hamilton parked his vehicle behind and to the side of the Audi. Tr. at 37. Trooper Smith arrived at the truck stop around the same time and offered back-up assistance to Sergeant Hamilton.

As Trooper Smith parked behind Sergeant Hamilton's car, Sergeant Hamilton was approaching the brown Audi. Sergeant Hamilton walked to the driver's side of the Audi, and, after exiting his patrol car, Trooper Smith walked to the passenger side. At the suppression hearing, Trooper Smith testified that as he approached the passenger side of the vehicle, he smelled a "strong odor of marijuana" and a "strong odor of alcoholic beverage." Tr. at 5–6. Trooper Smith described the smell of the marijuana odor as "burnt marijuana." Tr. at 7. He testified that he detected the odor when he was within "a foot or two" of the vehicle. Tr. at 16. Sergeant Hamilton, however, testified that both windows were rolled down when he approached the car and he detected only the odor of alcohol. Tr. at 30. At the suppression hearing, Sergeant Hamilton also testified that in five years of law enforcement experience he had smelled burnt marijuana too many times to count. Tr. at 34.

When Sergeant Hamilton approached the vehicle on the driver's side, he asked Carlson how he was doing. Sergeant Hamilton informed Carlson that he had received a dispatch concerning the erratic driving of a vehicle matching the description and Alabama license plate number of Carlson's vehicle. When asked whether he had had anything to drink, Carlson responded, "one beer." Tr. at 30. Sergeant Hamilton then asked Carlson and

his passenger, Lindsey Cholewa, if they would submit to a portable breath test. Both Carlson and Cholewa agreed to take the test and exited the vehicle. According to the portable breath test, Carlson's blood alcoholic content was .04% while Cholewa's was .00%.

The testimony about what had happened during and soon after the administration of the portable breath test was inconsistent.[1] Trooper Smith testified that he told Sergeant Hamilton about the odor of marijuana shortly after Carlson and Cholewa had exited the vehicle. Tr. at 18. Trooper Smith then began conducting a search of the vehicle based on the odor of the marijuana and alcohol. Tr. at 7. While searching the vehicle, Trooper Smith noticed a sweatshirt that had been placed between the driver and passenger seat. Tr. at 19. When he pulled the sweatshirt aside he found a canister containing a marijuana pipe, a plastic container, and a 35 mm film container. Tr. at 20.

At first, Sergeant Hamilton testified that he administered the portable breath test, established that both Carlson and Cholewa were within legal limits, and then told them both that they were free to go. Tr. at 31–32. Plans for their release changed, according to Sergeant Hamilton's direct testimony, when Trooper Smith told him that he smelled marijuana. Tr. at 32. However, on cross-examination, Sergeant Hamilton testified that he did not tell Carlson and Cholewa they were free to go. Rather, he told them that if they tested below the legal limit, then "they would have been on their way like they wanted to ... be." Tr. at 38. He then testified that he had not completed the portable breath tests on Carlson and Cholewa before Trooper Smith told him he had smelled

marijuana. Tr. at 38. Sergeant Hamilton gave the following revised account:

> I tested the driver. I was going to do the passenger and that is when Trooper Smith was engaged in the, the moving of the sweater in the vehicle, while I was testing the passenger. So by the end of the time that I tested the passenger, that is when Trooper Smith told me that he had found burnt marijuana and marijuana in the vehicle, or suspected marijuana.

Tr. at 38. When asked what part of the investigation he was engaged in when Trooper Smith told him about the marijuana smell, Sergeant Hamilton reiterated: "I was finishing the test on the passenger." Tr. at 39.

At some point after Trooper Smith discovered the canister, Cholewa and Carlson were handcuffed. Trooper Smith and Sergeant Hamilton then searched the passenger compartment of the vehicle. They found another marijuana pipe and a Mason jar containing a large bud of marijuana in a duffle bag inside the car. Tr. at 9. Sergeant Hamilton searched the trunk and found more marijuana. Tr. at 23. They searched the trunk at that time because they planned to arrest both Carlson and Cholewa and impound the vehicle. However, they ultimately decided to arrest only Carlson and allow Cholewa to drive the car away because Carlson claimed the marijuana was his-not Cholewa's-and because the car was registered in Cholewa's name.

On May 12, 2000, Carlson was charged with possession of marijuana in excess of thirty grams,[2] a class D felony. He subsequently filed a motion to suppress all evidence gathered during the warrantless search of the Audi. After a hearing, the

1. Only Trooper Smith and Sergeant Hamilton testified at the suppression hearing.

2. IND.CODE § 35–48–4–11.

trial court granted Carlson's motion. The State now appeals.

## DISCUSSION AND DECISION
### I. Standard of Review

 On appeal from the grant of a motion to suppress, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *State v. Farber*, 677 N.E.2d 1111, 1113–14 (Ind.Ct.App. 1997), *trans. denied.* We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* at 1114. We neither reweigh the evidence nor judge the credibility of witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.*

### II. Initial Encounter Was Not a Seizure of the Person

 Before we address the State's contention that probable cause existed to search the vehicle, we must first decide whether the initial encounter between Carlson and the police triggered Fourth Amendment protections. Not every confrontation between "policemen and citizens" amounts to a Fourth Amendment "seizure" of persons. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude a 'seizure' has occurred." *Id.* A seizure does not occur simply because a police officer approaches a person, asks questions, or requests identification. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

 The U.S. Supreme Court has outlined a test for establishing when police questioning results in a seizure:

[P]olice questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment. But if the person refuses to answer and the police take additional steps ... to obtain an answer, then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure.

*INS v. Delgado*, 466 U.S. 210, 216–17, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).

Applying a version of the U.S. Supreme Court's test, this court has determined that not "every street encounter between a citizen and the police" is a seizure. *Overstreet v. State*, 724 N.E.2d 661, 664 (Ind.Ct. App.2000), *trans. denied.* In *Overstreet*, a police officer noticed the defendant looking into a mailbox and then close the mailbox before hurriedly walking to a parked car and driving away. *Id.* at 662. The defendant drove to a gas station, stopped his vehicle, and then exited the vehicle to pump air into one of his automobile tires. *Id.* at 662–63. Following the defendant, the police officer pulled behind the defendant's car at the gas station. *Id.* at 663. Without activating his flashing lights, the officer got out of his vehicle, walked up to the defendant, and asked him what he had been doing at the mailbox and for his identification. *Id.* The defendant volunteered that his license was suspended. *Id.* We reasoned that the encounter in *Overstreet* did not implicate the Fourth Amend-

ment because the police officer made a casual and brief inquiry of the defendant without arresting or stopping the defendant. *Id.* at 663–64. In other words, the defendant made no showing that the officer intruded upon his liberty to the extent that he did not feel free to leave. *Id.* at 664.

Similarly, a number of jurisdictions have held that there is no "seizure of persons" when an officer walks up to a person seated in a parked vehicle in a public place and puts a question to that person.[3] The encounter might become a seizure, however, when a police officer orders a suspect to freeze or get out of the vehicle. *See* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3(a), at 107 (1996). The Fourth Amendment may also be implicated when police "box in" a suspect's vehicle, approach the vehicle "on all sides by many officers," point a gun at the suspect, or order the suspect to place his hands on the wheel. *Id.* § 9.3(a), at 108.

Here, the record indicates that Sergeant Hamilton parked behind and to the side of Carlson's vehicle. Tr. at 37. Moreover, neither Trooper Harris nor Sergeant Hamilton ordered Carlson to do anything.

Sergeant Hamilton asked Carlson how he was doing, informed him that he had received a dispatch concerning the erratic driving of car matching the Audi's description, and then asked Carlson if he had been drinking. Tr. at 30. At this time, Sergeant Hamilton noticed the odor of alcohol and asked Carlson if he "would mind" submitting to a portable breath test. Tr. at 30–31. Given these facts, we cannot say that the police approach of Carlson's vehicle parked in a public place and Sergeant Hamilton's subsequent questioning amounted to a Fourth Amendment "seizure" of Carlson's person.[4] For this reason, we need not address either party's argument concerning the reliability of the unidentified tipster or whether the police had the reasonable suspicion required to conduct a *Terry* stop.

### III. Probable Cause Did Not Exist To Search the Vehicle

Having found that the initial encounter between Carlson and the police did not result in Fourth Amendment "seizure," we now turn to the State's contention that probable cause existed to search Carlson's vehicle. The State claims that Trooper Smith had probable cause to

---

3. *See, e.g., Latta v. Keryte,* 118 F.3d 693, 699 (10th Cir.1997) (holding that no seizure occurred where police officer approached parked vehicle and asked defendant to get out, but instead the defendant drove off); *United States v. Kim,* 25 F.3d 1426, 1430–31 (9th Cir.1994) (holding that there was no *Terry* stop where police officers came upon an already parked vehicle even though police car "partially blocked" the parked car); *People v. Long,* 99 Ill.2d 219, 75 Ill.Dec. 693, 457 N.E.2d 1252, 1257 (1983) (holding no seizure occurred where a police officer approached a parked vehicle and asked defendant a few questions); *State v. Marks,* 226 Kan. 704, 602 P.2d 1344, 1349 (1979) (holding that no seizure occurred where officer, responding to a police dispatch, approached parked vehicle and put questions to occupants); *People v. Taylor,* 454 Mich. 580, 564 N.W.2d 24, 28

(1997) (holding that officer made no seizure by merely approaching the vehicle in a public place and asking defendants if they were willing to answer some questions), *overruled on other grounds by People v. Kazmierczak,* 461 Mich. 411, 605 N.W.2d 667, 674–75 (2000); *State v. Glaesman,* 545 N.W.2d 178, 182 (N.D. 1996) (holding that there was no seizure where police officer walked up to a parked pickup truck and then, when driver opened door, police officer smelled alcohol).

4. Because of our disposition of the cause, we need not decide at what point the police seized Carlson's person. We only hold that the initial encounter between the police and Carlson did not implicate the Fourth Amendment.

search Carlson's automobile under the automobile exception to the Fourth Amendment[5] warrant requirement. Appellant's brief at 6. According to the State's argument, probable cause to search the vehicle existed because of the odor of marijuana emanating from the vehicle. The Fourth Amendment, applicable to the States through the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Under the federal constitution, searches and seizures " 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Middleton v. State*, 714 N.E.2d 1099, 1101 (Ind.1999) (footnote omitted) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The State carries the burden of demonstrating that a warrantless search or seizure falls within one of the exceptions. *Taylor v. State*, 659 N.E.2d 535, 537 (Ind.1995).

The State did not carry its burden here. Even if we were to announce that the odor of marijuana is sufficient by itself to give police probable cause to search a vehicle,[6] the State has not proven that such an odor was emanating from Carlson's vehicle. Sergeant Hamilton testified that he did not notice the odor of burnt marijuana even though both windows to Carlson's vehicle were rolled down and even though he detected the smell of alcohol. Moreover, Sergeant Hamilton's testimony, regarding the point at which the encounter turned into a criminal investigation, was inconsistent. *Compare* Tr. at 31–32 (testifying he had established that both Carlson and Cholewa were within legal BAC limits and then told them both that they were free to go), *with* Tr. at 39 (testifying that he was finishing the test on the Cholewa when Trooper Harris alerted him to the marijuana smell). Finally, Trooper Harris's testimony about the events that led up to the search of the vehicle contradicts Sergeant Hamilton's testimony. *See* Tr. at 18 (testifying that he told Sergeant Hamilton about the odor of marijuana after Carlson and Cholewa had exited the vehicle but before they had taken the portable breath test). Given these inconsistencies, the State may not successfully argue that the evidence is without conflict and leads to a conclusion opposite that reached by the

---

**5.** Carlson cites Article 1, Section 11 of the Indiana Constitution in his appellate brief but develops no state constitutional argument separate from federal constitutional law. Therefore, we will apply only Fourth Amendment search and seizure law in the instant case; any state constitutional claim has been waived. *See Lockett v. State*, 747 N.E.2d 539, 541 (Ind.2001).

**6.** At least two decisions from this court have addressed the issue but have not squarely decided it. *Sebastian v. State*, 726 N.E.2d 827, 830 (Ind.Ct.App.2000) ("We hold that based upon the totality of the facts and circumstances surrounding this case, *including* the smell of marijuana emanating from the stopped vehicle and the legal pat-down frisk of Sebastian, the officer had probable cause to arrest Sebastian and the search of his vehicle was proper.") (emphasis supplied), *trans. denied*; *Kenner v. State*, 703 N.E.2d 1122, 1127 (Ind.Ct.App.1999) ("We reserve for another day the resolution of whether in Indiana the odor of marijuana standing alone constitutes probable cause justifying a search."), *trans. denied*.

trial court. *See Farber,* 677 N.E.2d at 1114. Because it appears from the record that the search of the vehicle did not fall within one of the exceptions to the warrant requirement, we conclude that the trial court properly granted Carlson's motion to suppress.

We affirm the trial court's grant of Carlson's motion to suppress.

NAJAM, J., concurs.

MATTINGLY–MAY, J., concurs with opinion.

MATTINGLY–MAY, Judge, concurring with opinion.

I concur fully in this case, but I would also note that the anonymous tip the police received was not sufficient to support a stop pursuant to *Washington v. State,* 740 N.E.2d 1241, 1246 (Ind.Ct.App.2000), *transfer denied* 753 N.E.2d 7 (Ind.2001).