**Andrew J. SCOTT, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 65A01–0307–CR–240.**

Court of Appeals of Indiana.

Feb. 27, 2004.

William W. Gooden, Mt. Vernon, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Andrew J. Scott appeals his conviction for dealing in a schedule II controlled substance[1] as a Class B felony and possession of chemical reagents or precursors with intent to manufacture[2] as a Class D felony. Scott raises three issues on appeal, which we restate as follows:

I. Whether the trial court abused its discretion by denying Scott's motion to suppress and allowing the admission of

---

1. IC 35–48–4–2(a)(1).

2. IC 35–48–4–14.5(c).

evidence found during the execution of a search warrant on Scott's property.

II. Whether the State presented sufficient evidence to sustain Scott's conviction for possession of chemical precursors with intent to manufacture methamphetamine.

III. Whether Scott's conviction for possession of chemical precursors with intent to manufacture methamphetamine is a lesser included offense of his conviction for dealing in methamphetamine by manufacturing.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 2, 2002, Officers Mark Saltzman and John Montgomery obtained a search warrant for Scott's residence located at 8622 Welborn Road, Evansville, Posey County, Indiana. The search warrant permitted the search and seizure of ether, anhydrous ammonia, sulfuric acid, salt, lithium, starting fluid cans, and remnants of a burn pile and any other items commonly associated with a clandestine manufacturing of methamphetamine, which would include the chemical products, any glassware, or other instrumentalities used to store or process methamphetamine.

Based on the evidence discovered during the search, the State charged Scott with Count I, dealing in a schedule II controlled substance; Count II, possession of chemical reagents or precursors with intent to manufacture; and Count III, illegal possession of anhydrous ammonia or ammonia solution[3] as a Class D felony. After a bench trial, Scott was found guilty of Counts I and II and not guilty of Count III. Scott now appeals.

3. IC 35–48–4–14.5(b).

## DISCUSSION AND DECISION

### I. Motion to Suppress

■ Scott claims that the trial court abused its discretion by denying his motion to suppress and allowing the admission of evidence found during the execution of the search warrant for his property. Specifically, Scott asserts that the search warrant was invalid because it was based upon observations made by the officers during an earlier, warrantless entry onto his property.

■ We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Scott v. State*, 775 N.E.2d 1207, 1209 (Ind.Ct.App.2002). In reviewing a motion to suppress, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Marlowe v. State*, 786 N.E.2d 751, 753 (Ind.Ct.App.2003). However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider the uncontested evidence favorable to the defendant. *Id.* We will affirm the judgment of the trial court if it is sustainable on any legal grounds apparent in the record. *Alford v. State*, 699 N.E.2d 247, 250 (Ind.1998).

The first police entry on Scott's property occurred when Officer Montgomery and Officer Saltzman received a dispatch concerning a strong chemical odor emanating from a residence on Welborn Road. Officer Montgomery determined that the odor was coming from Scott's residence at 8622 Welborn Road. When Officer Montgomery arrived at Scott's property, he observed three individuals standing by a fire, which was later found to be a burn pile. Scott approached Officer Montgomery's patrol car and asked why he was there. Officer

Montgomery stated that there had been a report of a strong acid smell coming from Scott's property. Scott immediately complained that he was tired of being reported to the police for chemical smells on his property. At this point, Scott told Officer Montgomery to leave unless he had a search warrant. Officer Montgomery left Scott's property but he noted empty cans in the fire and the strong smell of acid in the air while he was there.

Shortly after Officer Montgomery left the property, Indiana State Trooper Werkmeister notified Officers Montgomery and Saltzman that there was an outstanding arrest warrant for Scott. Approximately twenty minutes after Officer Montgomery's first entry on Scott's property, Officers Montgomery and Saltzman and Trooper Werkmeister returned to the property to arrest Scott. When they arrived, Scott was in front of his residence. Trooper Werkmeister and Officer Montgomery secured Scott while Officer Saltzman walked around the property. He walked from his vehicle around the east, torn out end of the mobile home; behind and between the mobile home; around the west end of the mobile home; and between the mobile home and the residence to the point where Officer Montgomery, Trooper Werkmeister, and Scott were located. Officer Saltzman was checking to see if the other two individuals that Officer Montgomery had previously seen by the fire were still there. Officer Saltzman did not see any other individuals as he walked around Scott's property. However, he saw a fire burning that contained three empty aerosol cans, which had puncture marks on the bottom. On two of the three cans, Officer Saltzman was able to read "starting fluid." *See Defendant's Exhibit* 2. Officer Saltzman also noticed an odor of battery acid in the air. Officer Saltzman did not have a search warrant when he walked around the property.

Subsequently, Officers Montgomery and Saltzman testified as to their observations at a hearing for the issuance of a search warrant for Scott's property. The trial court determined that probable cause existed and issued a search warrant. Following the search and discovery of various materials associated with the manufacturing of methamphetamine, Scott was charged with dealing in methamphetamine and possession of chemical precursors with intent to manufacture methamphetamine.

Here, Scott argues that the trial court improperly denied his motion to suppress because the search warrant was based on a prior warrantless search of his property. *See Esquerdo v. State*, 640 N.E.2d 1023, 1030 (Ind.1994) (holding that evidence obtained during an illegal search may not be used to support a subsequent search warrant). The State maintains that the trial court properly denied Scott's motion to suppress and correctly admitted the evidence found during the execution of the search warrant because Officer Saltzman's warrantless search of the property was a protective sweep performed while Officer Montgomery and Trooper Werkmeister executed an outstanding arrest warrant on Scott.

■■■ The U.S. Constitution and the Indiana Constitution provide different tests for determining whether there has been a violation of the right to be free of unreasonable search and seizure in such circumstances. "Federal Fourth Amendment law protects citizens, . . . from warrantless searches of places or items in which the individual has an actual, subjective expectation of privacy which society recognizes as reasonable." *Trowbridge v. State*, 717 N.E.2d 138, 143 (Ind.1999). Exceptions to the Fourth Amendment's search warrant requirement before lawful entry "include risk of bodily harm or

death, aiding a person in need of assistance, protecting private property, or actual or imminent destruction or removal of evidence before a search warrant may be obtained." *Harless v. State,* 577 N.E.2d 245, 248 (Ind.Ct.App.1991).

■ Analysis under Article I, Section 11 of the Indiana Constitution requires examination of the specific facts of each case and whether police conduct is reasonable in light of the totality of the circumstances. *See Trowbridge,* 717 N.E.2d at 144.

As discussed above, Officer Montgomery initially entered Scott's property after he received a complaint concerning a strong chemical odor emanating from the property. Scott asked Officer Montgomery to leave his property if he did not have a warrant. Officer Montgomery complied but noted that two other individuals were standing with Scott around a fire, the smell of battery acid was prominent, and cans were in the burn pile. Approximately twenty minutes later, Officers Montgomery and Saltzman and Trooper Werkmeister returned to Scott's property to execute an outstanding arrest warrant on Scott. Therefore, at the point that Scott was arrested outside of the residence, the officers suspected that Scott was manufacturing methamphetamine, which they knew to be a process that could be quickly dismantled, and which they knew to be highly volatile because of the explosive nature of the chemicals used in the manufacturing process. Additionally and importantly, the officers had reasonable suspicion to believe that the other two individuals that Officer Montgomery had seen by the burn pile were still on the property and were capable of inflicting bodily harm. The combined knowledge of the facts that the manufacture of methamphetamine can be dangerous and that there were possibly other individuals on the property that were capable of causing bodily harm would cause any reasonable police officer to see the immediate need to identify any remaining persons on the property, and insure they did not pose a risk of harm.

■ Here, Officer Saltzman conducted a protective sweep of Scott's property pursuant to an arrest warrant. Officer Saltzman was looking for the two individuals who were standing next to the burn pile with Scott when Officer Montgomery initially entered the property. These individuals could have posed a threat to the officers who were on the property to arrest Scott. Officer Saltzman's actions were a reasonable attempt to secure the premises from a possible explosion as well as to protect the officers on the premises from bodily harm. The State argues, and we agree, that Officer Saltzman legitimately conducted a protective sweep. A protective sweep is a legitimate justification for the entry into and search of property under the exceptions to the federal warrant requirement. *See VanWinkle v. State,* 764 N.E.2d 258, 267 (Ind.Ct.App.2002); *Harless,* 577 N.E.2d at 248.

Additionally, under Article I, Section 11 of the Indiana Constitution, Officer Saltzman's sweep was reasonable because he only walked through the area where Officer Montgomery had observed Scott and two other individuals standing by a fire. This was a logical route to determine if these individuals, who could have inflicted harm upon the officers, were still behind the mobile home. Officer Saltzman's intrusion was minimal, and the potential for harm existed. The sweep did not exceed the scope necessary to determine if the other two individuals were still present, and it did not last longer than necessary to complete the arrest and depart the premises. Therefore, Officer Saltzman's sweep was reasonable and did not violate Article I, Section 11 of the Indiana Constitution.

Accordingly, we conclude that Officer Saltzman's entry onto and search of the property in order to protect the officers present was justified under both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution.[4]

Moreover, we note that a search warrant may only be issued upon a showing of probable cause, supported by oath or affirmation. *See* IC 35–33–5–1. Scott does not argue that the officers lacked probable cause to obtain the search warrant. Rather, he argues that Officer Saltzman's initial sweep of the property was illegal and all evidence obtained thereby must be suppressed. Because we conclude that Officer Saltzman's initial search was a justified and reasonable protective sweep during the execution of an arrest warrant for Scott, we conclude that the subsequent search warrant issued later that same day was properly granted, and the evidence obtained thereby should not be suppressed. Accordingly, the trial court properly denied Scott's motion to suppress. *See Marlowe*, 786 N.E.2d at 753.

## II. Sufficiency of the Evidence

■■■ Next, Scott contends that the evidence presented by the State is insufficient to sustain his conviction for possession of chemical precursors with the intent to manufacture methamphetamine.

■■■ When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge witness credibility. *Oeth v. State*, 775 N.E.2d 696, 700 (Ind.Ct. App.2002), *trans. denied* (2003); *Bailey v. State*, 764 N.E.2d 728, 730 (Ind.Ct.App. 2002), *trans. denied.* Instead, we examine only the evidence favorable to the judgment, together with the reasonable inferences to be drawn therefrom. *Oeth*, 775 N.E.2d at 700; *Bailey*, 764 N.E.2d at 730. We will affirm the conviction if evidence of probative value exists from which a factfinder could find the defendant guilty beyond a reasonable doubt. *Bailey*, 764 N.E.2d at 730.

In order to obtain a conviction for possession of chemical precursors with the intent to manufacture methamphetamine, the State was required to present evidence that Scott possessed the chemicals required to manufacture methamphetamine such as, chemical reagents or precursors like pseudoephedrine, lithium metal, and sulfuric acid. *See* IC 35–48–4– 14.5(a)(2)(8)(11). Scott contends that the evidence presented by the State was insufficient to sustain his conviction because the State presented no direct evidence presented to prove that he possessed sulfuric acid, pseudoephedrine, and lithium. Conversely, the State maintains, and we agree, that sufficient evidence was presented to sustain Scott's conviction.

■■■ Here, the State presented evidence that Scott possessed Liquid Fire, which contained sulfuric acid; medicine like Sudafed, which contained pseudoephedrine; and a lithium battery, which contained lithium. Scott argues that the only evidence that the commercial products contained sulfuric acid, pseudoephedrine, and lithium were the labels on the packaging. He further maintains that the labels are inadmissible hearsay by arguing, "the evidence for the labels is not sufficiently reliable to prove an element of a

---

4. Because we find that Officer Saltzman's warrantless search was a valid protective sweep, we do not need to address the State's alternative argument that the trial court properly denied the motion to suppress because the area viewed by Officer Saltzman fell within the open field exception. *See Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984); *Blalock v. State*, 483 N.E.2d 439, 442 (Ind.1985); *Troyer v. State*, 605 N.E.2d 1183, 1184 (Ind.Ct.App. 1993).

crime beyond a reasonable doubt." *Appellant's Brief* at 16. However, Scott failed to object to the admission of this evidence on hearsay grounds. "For purposes of sufficiency review, otherwise inadmissible hearsay evidence may be considered for substantive purposes and is sufficient to establish a material fact at issue when the hearsay evidence is admitted without a timely objection at trial." *Miles v. State*, 777 N.E.2d 767, 771 (Ind.Ct.App.2002) (failure to object at trial waives any claim of error and allows otherwise inadmissible hearsay evidence to be considered for substantive purposes).

Because the State presented evidence that Scott possessed sulfuric acid, pseudoephedrine, and lithium through labels on commercial products, we find that evidence of probative value exists from which a factfinder could find Scott guilty beyond a reasonable doubt of possession of chemical precursors with intent to manufacture methamphetamine. *See Bailey*, 764 N.E.2d at 730. Accordingly, the evidence presented by the State is sufficient to sustain Scott's conviction for possession of precursors with intent to manufacture methamphetamine.

### III. Included Offense

 Lastly, Scott contends that his conviction for possession of chemical precursors with intent to manufacture methamphetamine must be vacated because it is a lesser included offense of dealing in methamphetamine by manufacturing, for which he was also convicted. IC 35–38–1–6 provides that if a defendant is charged in separate counts with an offense and an included offense, and is found guilty of both counts, "judgment and sentence may not be entered against the defendant for the included offense." IC 35–41–1–16 states:

'Included offense' means an offense that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

A lesser included offense is necessarily included within the greater offense if it is impossible to commit the greater offense without first having committed the lesser. *Iddings v. State*, 772 N.E.2d 1006, 1016 (Ind.Ct.App.2002).

A person who knowingly or intentionally manufactures a schedule II controlled substance, which includes methamphetamine, commits dealing in a schedule II controlled substance, a Class B felony. IC 35–48–4–2(a)(1)(A). A person who possesses anhydrous ammonia or ammonia solution with the intent to manufacture methamphetamine commits a Class D felony. IC 35–48–4–14.5(c). We accept that it is impossible to knowingly or intentionally manufacture methamphetamine without first possessing the chemical precursors of methamphetamine with the intent to make the drug. The sole practical difference between these two offenses is that one may be guilty of possessing chemical precursors with intent to manufacture without actually beginning the manufacturing process, whereas the manufacturing process must, at the very least, have been started by a defendant in order to be found guilty of manufacturing methamphetamine.

 IC 35–38–1–6 does not preclude conviction and sentence for both offenses. *Bush v. State*, 772 N.E.2d 1020,

1024 (Ind.Ct.App.2002) (citing *Ingram v. State,* 718 N.E.2d 379, 381 (Ind.1999)). If the evidence indicates that one crime is independent of another crime, it is not an included offense. *See Ingram,* 718 N.E.2d at 381 (declining to hold defendant's criminal confinement conviction was lesser included offense of criminal deviate conduct and sexual battery where force or threat of force went beyond that necessary to effectuate those offenses). IC 35–38–1–6 only precludes convictions on multiple counts where those counts had identical elements of proof. *See Goudy v. State,* 689 N.E.2d 686, 698 (Ind.1997) (vacating attempted carjacking conviction as lesser included offense of attempted robbery but emphasizing that it was necessary to do so only because both offenses involved the attempted taking of the same motor vehicle). Thus, whether an offense is included in another within the meaning of IC 35–38–1–6 requires careful examination of the facts and circumstances of each particular case. *See Iddings,* 772 N.E.2d at 1017.

In *Iddings,* officers first engaged in a controlled buy to purchase methamphetamine from the defendant and then discovered several precursors within his garage while executing a search warrant. *Id.* The jury convicted the defendant of both dealing in methamphetamine by manufacturing and possessing precursors for methamphetamine. *Id.* The defendant argued that his conviction for possession of precursors for methamphetamine constituted a lesser included offense of his dealing conviction. *Id.* This court held two independent offenses had occurred because the officers recovered completed methamphetamine from the defendant's residence in addition to the precursors to make more methamphetamine.

In *Bush,* officers executed a search warrant for evidence of marijuana and found several precursors to manufacturing meth-

amphetamine. *Bush,* 772 N.E.2d at 1021. The officers found only precursors for methamphetamine, but not actual methamphetamine. *Id.* The defendant was charged and convicted with both possession of precursors for methamphetamine and dealing in methamphetamine by manufacturing. *Id.* On appeal, this court sua sponte held that the defendant's conviction for possession of precursors for methamphetamine was a lesser included offense to his dealing in methamphetamine by manufacturing conviction because officers did not find any completed methamphetamine in his residence. *Id.* at 1024. Specifically, we reasoned that because no evidence of possession separate from the manufacturing process had been recovered, it was impossible to fairly state that the manufacturing and possession of precursors in this case were clearly independent of each other. *Id.*

The clear distinction between *Iddings* and *Bush* lies in the evidence presented to show whether two independent offenses occurred. In *Iddings,* there were two independent offenses because the officers found completed methamphetamine during their search as well precursors for methamphetamine. *Iddings,* 772 N.E.2d at 1011. Specifically, the evidence in *Iddings* revealed that (1) the defendant had already completed the manufacturing of some methamphetamine and (2) he possessed precursors with intent to make more of the drug. *Id.* at 1017–18. In *Bush,* the same evidence establishing that Bush was knowingly or intentionally manufacturing methamphetamine also established that he possessed the precursors for methamphetamine. *Bush,* 772 N.E.2d at 1024. As result, the possession of chemical precursors with intent to manufacture methamphetamine charge was a lesser included offense of the manufacturing of methamphetamine charge.

Here, the evidence indicates that Scott had previously manufactured methamphetamine on his property. Officer Cooper testified that punctured and burned starting fluid cans, empty mineral spirits cans, stripped out lithium batteries, and two plastic containers that were being used as HCL generators[5] were found on Scott's property. Further, the evidence presented shows that Scott told Deputy Montgomery that he was tired of people calling in to the police about the smell of ether emanating from his property. Moreover, Jason Kinder, a jail officer at the Posey Court Jail, testified that when he informed Scott of the charges against him, Scott stated: "I don't know how they can say I manufactured meth, I haven't manufactured any meth in two weeks." *Appellant's Appendix* at 129. Additionally, the evidence reflects that materials to manufacture more methamphetamine were found on Scott's property. Officer Cooper testified that he and the other officers found several different pills containing pseudoephedrine or pseudoephedrine HCI, anhydrous ammonia, lithium batteries, Coleman Fuel, salt, coffee filters, Liquid Fire, and plastic tubing in Scott's mobile home located on his property. These items were not empty, but were full and ready to be used to make additional methamphetamine.

In this case, the evidence presented reasonably leads to the conclusion that actual methamphetamine had already been created on the property by Scott. Other materials that were found in Scott's possession indicated that he intended to create additional methamphetamine. Because the evidence supports the inference that two independent offenses occurred, the possession of chemical precursors with intent to manufacture methamphetamine charge is not a lesser included offense of the dealing in methamphetamine by man-

ufacturing charge. *See Iddings,* 772 N.E.2d at 1017. Thus, Scott's conviction for the possession of chemical precursors with intent to manufacture methamphetamine need not be vacated.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.

---

**5.** An HCL generator is a device that is used in the manufacturing of methamphetamine.