**William JOHNSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 49A02–0410–CR–901.**

Court of Appeals of Indiana.

Dec. 30, 2005.

Publication Ordered Feb. 15, 2006.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, William Johnson, brings this interlocutory appeal challenging the trial court's denial of his motion to suppress. Upon appeal, Johnson presents one issue for our review: whether his right to be free from unreasonable search and seizure as guaranteed by the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution was violated.

We reverse.

On March 3, 2004, Indianapolis Police Officer Richard Riddle was on patrol at the Parkwood Apartments [1] when he noticed four individuals exit an apartment and get into a vehicle which was parked

---

1. We note that Officer Riddle referred to the apartment complex as the "Forest Grove Apartments." However, according to Officer Matthew Jennings, who also testified at the suppression hearing, the apartment complex is known as the Parkwood Apartments located in the 3800 block of Forest Grove Drive.

along the street.[2] Officer Riddle observed that there was no visible license plate on the vehicle, so he radioed Officer Matthew Jennings, who was also on patrol in the apartment complex, to inform Officer Jennings of his intention to stop the vehicle once it started moving. While speaking with Officer Riddle, Officer Jennings had pulled up in his marked police car parallel to the subject car. Officer Jennings then backed his car up and parked it ten to fifteen feet in front of the subject car.[3] The individual in the driver's seat exited the car and approached Officer Jennings's car. Officer Jennings told the individual to get back in the car and informed her that Officer Riddle would be approaching to talk to her.

Officer Riddle then approached the car, obtained identification from the individual in the driver's seat, and asked for identification from each of the three other occupants in the car. Those individuals, one of whom was Johnson, stated that they did not have identification. Officer Riddle then asked each of those occupants to identify themselves. Johnson told Officer Riddle that his name was "Gregory Jefferson" and gave him a date of birth. When Officer Riddle asked Johnson for his social security number, Johnson responded that he could not remember it. Officer Riddle found this to be suspicious because in his experience most adults know their social security number. Suspecting that Johnson had given him a false name in order to conceal his true identity, Officer Riddle asked Johnson to step out of the car so he could further investigate. As Johnson got out of the car, Officer Riddle instructed him, for safety reasons, to put his hands on the trunk of the car. Johnson did not

comply with Officer Riddle's request; rather, Johnson made a quick turn to his right and took a step forward in what Officer Riddle believed to be an attempt by Johnson to flee. Officer Riddle grabbed the back of Johnson's jacket, and a brief struggle ensued. After Johnson was under control, Officer Riddle placed him under arrest. Officer Jennings then searched Johnson and found two plastic bags containing a white substance in his right front pocket and a large amount of what he suspected to be marijuana in Johnson's jacket pocket.

On March 4, 2004, the State charged Johnson with possession of a controlled substance, battery on a law enforcement officer, resisting law enforcement, and possession of marijuana. On July 19, 2004, Johnson filed a motion to suppress, which was heard by the court the same day. The trial court denied Johnson's motion to suppress on August 23, 2004. On September 20, 2004, Johnson filed a petition to certify the order for interlocutory appeal, which the trial court granted on September 28, 2004. This court accepted Johnson's petition for interlocutory appeal on December 21, 2004.

 We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Scott v. State*, 803 N.E.2d 1231, 1234 (Ind.Ct.App.2004). In reviewing a motion to suppress ruling, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider uncontested evidence favorable to

---

2. The record indicates that the apartments are privately owned, but that the street upon which the vehicle was parked is owned by the City of Indianapolis.

3. After Officer Jennings parked his car, he was not blocking the subject vehicle from leaving.

the defendant. *Id.* We will affirm the judgment of the trial court if it is sustainable on any legal grounds apparent in the record. *Id.*

Upon appeal, Johnson argues that the trial court erred in denying his motion to suppress the evidence obtained as a result of the search of his person, asserting that his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution were violated. Specifically, Johnson argues that Officer Riddle did not have any individualized suspicion of any wrongdoing on his part to justify the demand for his identification and the resulting seizure. The State on the other hand argues that Officer Riddle's initial inquiry and request for identification did not constitute a seizure, but rather was a consensual encounter. The State continues its argument, asserting that Officer Riddle then lawfully seized Johnson by ordering him out of the car because Officer Riddle suspected that Johnson was trying to conceal his identity.[4]

The Fourth Amendment protects citizens against "unreasonable searches and seizures." *Jefferson v. State,* 780 N.E.2d 398, 403 (Ind.Ct.App.2002). Likewise, the purpose of Article 1, Section 11 is to protect those areas of life which Hoosiers regard as private from unreasonable police activity.[5] *Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995). Any evidence obtained from an unconstitutional seizure may not be used in a subsequent prosecution and is the proper subject of a motion to suppress. *Jefferson,* 780 N.E.2d at 403.

We begin by noting that not every encounter between policemen and citizens amounts to a Fourth Amendment seizure. *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Carlson,* 762 N.E.2d 121, 125 (Ind. Ct.App.2002); *Overstreet v. State,* 724 N.E.2d 661, 664 (Ind.Ct.App.2000), *trans. denied.* Indeed, a seizure does not occur simply because a police officer approaches a person, asks questions, or requests identification. *Carlson,* 762 N.E.2d at 125 (citing *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). Un-

4. The State also argues that constitutional protections are not at issue in the present case because the incident occurred on the private property of the Parkwood Apartments. The State asserts that as a private establishment, the apartment complex has the right to establish its own regulations regarding residents and visitors. The State continues, noting that the apartment complex and the police entered into an agency agreement which allows individual police officers to act as agents of the apartment complex. According to Officer Riddle, the agreement permits police officers to stop any individual within the apartment complex, request identification, and compare the identification with a master trespass list provided by the apartment complex. Thus, the State argues that Officer Riddle was acting as an agent of the apartment complex and therefore, pursuant to the agreement, had authority to stop Johnson without implicating the Fourth Amendment and Article 1, Section 11.

Here, we need not address the propriety of the State's agency argument because from the record before us, it is clear that Officer Riddle was not acting as an agent of the apartment complex, but rather as a police officer in his official capacity with the Indianapolis Police Department. To be sure, Officer Riddle testified at the suppression hearing that on the day in question he was working for the City of Indianapolis. The Fourth Amendment and Article 1, Section 11 are implicated when the government intrudes upon an individual's right to be free of unreasonable search and seizure.

5. Specifically, Article 1, Section 11 provides that "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated."

der such circumstances where the police officer makes only a casual and brief inquiry, the encounter is deemed consensual. As this court has before quoted with approval:

" '[P]olice questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment.' " *Id.* (quoting *INS v. Delgado,* 466 U.S. 210, 216–17, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)).

However, a consensual encounter may become a seizure when a police officer orders a suspect to freeze or get out of a vehicle. *Id.* at 126 (citing 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3(a), at 107). For Fourth Amendment purposes, a seizure occurs only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Id.* at 125 (citing *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. 1868).

 When an individual no longer remains free to leave the officer's presence, an investigatory stop has begun. *Dawson v. State,* 786 N.E.2d 742, 745 (Ind. Ct.App.2003), *trans. denied.* An investigatory stop of a citizen by a police officer does not violate the individual's Fourth Amendment rights where the officer has a reasonable articulable suspicion of criminal activity. *Terry,* 392 U.S. at 21, 88 S.Ct. 1868. Similarly, under Article 1, Section 11, a police stop and brief detention is reasonable if the officer reasonably suspects that the individual is engaged in, or is about to engage in, illegal activity. *State v. Ritter,* 801 N.E.2d 689, 691 (Ind. Ct.App.2004), *trans. denied.*

 Whether an officer had reasonable suspicion sufficient to justify an investigative stop is determined on a case-by-case basis. *Dawson,* 786 N.E.2d at 745. Reasonable suspicion does not require proof of wrongdoing by a preponderance of the evidence, but something more than an inchoate and unparticularized suspicion or hunch. *Id.* Consideration of the totality of the circumstances necessarily includes a consideration of whether the defendant's actions were suspicious. *Id.*

Here, we conclude that an investigatory stop clearly began at that point during the encounter where Officer Riddle ordered Johnson out of the vehicle.[6] *See Carlson,* 762 N.E.2d at 125. In ordering Johnson to get out of the vehicle and to put his hands on the trunk of the car, Officer Riddle clearly demonstrated authority such that a reasonable person would not have felt free to leave. Indeed, the record here indicates that Johnson was not free to leave, for when Johnson took a step away from Officer Riddle, Officer Riddle believed it to be an attempt by Johnson to leave, and Officer Riddle restrained him from doing so. Thus, the issue before us is whether Officer Riddle had reasonable suspicion sufficient to justify the investigatory stop.

6. Because a seizure clearly occurred at this point during the encounter, we need not address whether Johnson was seized at some prior point, such as when Officer Jennings ordered the would-be driver to return to the vehicle which was immediately followed by Officer Riddle's approach and request for identification from all occupants in the vehicle.

At the time that Officer Riddle made the investigatory stop, Officer Riddle knew only that Johnson and the other individuals left an apartment and got into a car which did not have a visible license plate. Officer Riddle testified at the suppression hearing that none of the individuals, including Johnson, acted suspiciously when they left an apartment and got into the vehicle parked on the street. Officer Riddle explained that because operation of a car without a visible license plate is a violation of the motor vehicle laws,[7] he intended to effectuate a traffic stop when the individuals left in the car. However, before the vehicle was "operated," Officer Riddle decided to approach the vehicle and request identification from the would-be driver and the other occupants, including Johnson. Officer Riddle testified that he became "suspicious" of Johnson only after Johnson could not provide him with a social security number when requested. Indeed, Officer Riddle testified that Johnson had committed no infraction or ordinance violation.[8]

Given these circumstances, we conclude that Officer Riddle did not have reasonable suspicion of criminal activity sufficient to justify an investigatory stop of Johnson. The mere fact that Johnson and the other individuals got into a car parked along the street which did not have a visible license plate does not support an investigatory stop. So far as our research has revealed, sitting in a car without a visible license plate is not a crime. Indeed, it appears that even Officer Riddle knew this fact as he initially planned to wait until the car was operated before initiating a traffic stop for operating a car without a visible license plate. Further, we note that an argument that a crime was about to be committed because the individuals were going to leave in the car is speculative, at least given the record before us. This argument would also fail because Johnson was not in the driver's seat, but rather was a mere passenger in the car; he therefore was not about to commit an infraction.

Nor can it be said that the inability to provide a social security number upon a police officer's request is sufficient to give rise to a reasonable suspicion that criminal activity may be afoot. Officer Riddle testified that when Johnson could not provide a social security number, he believed that Johnson was trying to conceal his true identity. Officer Riddle did not, however, articulate what particular criminal activity he believed had or was about to take place. Thus, we can only conclude that Johnson's inability to provide a social security number gave rise only to a hunch that something might be amiss. As we have before stated, a hunch is not sufficient to authorize an investigatory stop. *Dawson,* 786 N.E.2d at 745; *Bovie v. State,* 760 N.E.2d 1195, 1198 (Ind.Ct.App.2002). Officer Riddle pointed to no other articulable facts which support a finding of reasonable sus-

---

7. Specifically, Indiana Code § 9–18–2–26 (Burns Code Ed. Supp.2005) provides in pertinent part that a license plate, among other requirements, "shall be ... in a place and position that are clearly visible...." *See also Merritt v. State,* 829 N.E.2d 472 (Ind.2005). A violation of this statute is a Class C infraction. Ind.Code § 9–18–2–40(b) (Burns Code Ed. Repl.2004).

8. We note that a person commits a Class C misdemeanor if the person "knowingly or intentionally refuses to provide either the per-

son's ... name, address, and date of birth ... or driver's license, if in the person's possession ... to a law enforcement officer who has stopped the person for an infraction or ordinance violation...." Ind.Code § 34–28–5–3.5 (Burns Code Ed. Repl.1998). Here, Officer Riddle testified that Johnson had committed no infraction or ordinance violation. Johnson simply could not recite a social security number. Failure to provide one's social security number is not a crime.

picion of criminal activity on the part of Johnson. Johnson was merely an occupant in a car parked along the street which did not have a visible license plate. Given the circumstances in the present case, we are constrained to conclude that the investigative Terry stop was not proper. The unlawful investigative stop was the precursor to the events which followed—Officer Riddle's belief that Johnson was attempting to flee, followed by a brief struggle, Johnson's arrest, and the search of his person which revealed contraband. But for Officer Riddle's unlawful investigative stop, Johnson would not have eventually been searched, and the contraband would not have been seized.

We likewise conclude that the police intrusion cannot withstand scrutiny under Article 1, Section 11 of the Indiana Constitution. Given the facts of this case, Officer Riddle acted unreasonably in ordering Johnson out of the car. At the time of the stop, there was no indication that Johnson had engaged in or was about to engage in any criminal activity. Officer Riddle intruded upon Johnson's right to be free of unreasonable police activity when, based upon an unparticularized suspicion, he seized Johnson by ordering him out of the car. We therefore reverse the trial court's denial of Johnson's motion to suppress.

The ruling of the trial court is reversed.

NAJAM, J., and RILEY, J., concur.

### ORDER

This Court heretofore handed down its opinion in this appeal on December 30, 2005, marked Memorandum Decision, Not for Publication.

Comes now the Appellant, by counsel, and files herein Motion to Publish, alleging therein that this Court's opinion in this appeal clarifies that "sitting in a car without a visible license plate in not a crime"

and also establishes that "the inability to provide a social security number upon a police officer's request" does not give rise to reasonable suspicion that criminal activity may be afoot.

The Appellant alleges that neither of these propositions is squarely addressed in existing Indiana case law.

The Court having examined said Motion to Publish, having reviewed its opinion in this case and being duly advised, now finds that the Appellant's Motion to Publish should be granted.

IT IS THEREFORE ORDERED that the Appellant's Motion to Publish is GRANTED, and this Court's opinion heretofore handed down in this cause on December 30, 2005, marked Memorandum Decision, Not for Publication, is now ordered published.