**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**IAN O'KEEFE**
Lafayette, Indiana



FILED
Apr 30 2012, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant- Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1111-CR-1067 |
| | ) | |
| BLAKE LODDE, | ) | |
| | ) | |
| Appellee- Defendant, | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Michael A. Morrissey, Judge
Cause No. 79D06-1011-FD-267

April 30, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

<u>Case Summary and Issue</u>

The State appeals the trial court order granting Blake Lodde's motion to suppress evidence gathered during and after an investigatory stop of Lodde's vehicle. The sole issue is whether the officer had reasonable suspicion to conduct an investigatory stop. Concluding that the trial court erred in applying the wrong standard in ruling on the motion to suppress, we reverse and remand.

<u>Facts and Procedural History</u>[1]

In late 2010, Deputy John Lendermon of the Tippecanoe County Sheriff's office was conducting routine status checks of several registered sex offenders assigned to him, one of whom was Lodde. While the two spoke at Lodde's home, Deputy Lendermon smelled a "very strong odor of an alcoholic beverage" emanating from Lodde and observed bloodshot, swollen, and glassy eyes. Transcript at 6; Appendix of Appellant at 11, 13. Deputy Lendermon later explained: "I just kind of put [my observations] aside, he was at home, he's an adult. I didn't really think a whole lot about it; I just kind of made a mental note of it." Tr. at 6. When later asked if Lodde told the deputy that he woke up just prior to the deputy's arrival, Deputy Lendermon conceded that Lodde "may have," but he did not remember. <u>Id.</u> at 10. Deputy Lendermon did not notice any problem with Lodde's balance or manual dexterity and did not recall Lodde slurring his speech.[2]

---

[1] We heard oral argument on March 29, 2012 at Ivy Tech Community College in Lafayette, Indiana. We thank Ivy Tech for its hospitality and counsel for their advocacy.

[2] Deputy Lendermon testified that he did not recall Lodde slurring his speech, tr. at 10, however, the deputy contended in his probable cause affidavit that Lodde's speech was slurred. App. of Appellant at 13.

Deputy Lendermon returned to his car to enter information regarding the status check into his computer, and saw Lodde enter his own car and begin to drive away. When Lodde turned from his driveway onto a street, the deputy pursued him and initiated an investigatory stop. Deputy Lendermon admitted he did not follow Lodde long enough to observe Lodde drive in a way that suggested he was impaired. He pulled over Lodde because: he "felt that [Lodde] was potentially intoxicated and . . . just wanted to make sure that [Lodde] was okay to drive," id. at 8, "the possibility of there being an accident or something like that was too great to not intervene immediately[,]" and "the odor [of alcohol] was that strong" during their initial conversation. Id. at 11-12.

Upon being pulled over, Lodde admitted he drank five or six beers "a few hours ago." App. of Appellant at 11 (quoting from the deputy's report). Lodde also submitted to field sobriety tests and a portable breath test.[3] Finally, he was transported to the jail for a blood draw, urine screen, and breathalyzer test, which indicated he had 0.10 grams of alcohol per 210 liters of breath.

The State charged Lodde with operating while intoxicated and operating a vehicle with a blood alcohol content of greater than 0.08 and less than 0.15, both Class C misdemeanors, and operating while intoxicated with a prior conviction for operating while intoxicated within the last five years, a Class D felony. Lodde filed a motion to dismiss which the trial court treated as a motion to suppress evidence gathered upon pulling over Lodde. At the close of the suppression hearing, at which Deputy Lendermon testified, the trial court stated:

---

[3] Lodde passed the one leg stand and walk and turn tests but failed the gaze nystagmus test. The portable breath test indicated 0.92 grams of alcohol per 210 liters of breath.

> [T]he ultimate question is, is the smell of alcohol and the eyes, does that reach a level where there is reasonable suspension [sic] to, you know, conduct an OWI investigation in and of itself.
>
> . . . [L]egally the issue is are those two factors alone sufficient to reach a level to be sufficient probable cause to make this stop . . . .

Tr. at 14.

In a written order, the trial court granted Lodde's motion to suppress, concluding: "While the Court does not question Deputy Lendermon's reasoning for effectuating a traffic stop, the Court finds that probable cause did not exist for this stop . . . ." App. of Appellant at 20. The State now appeals.

## Discussion and Decision

### I. Standard of Review

When reviewing a trial court's ruling on a motion to suppress evidence, we must determine whether substantial evidence of probative value supports the trial court's decision. State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006). Where a trial court granted a motion to suppress, the State appeals from a negative judgment and must show that the trial court's grant of the motion was contrary to law. State v. Carlson, 762 N.E.2d 121, 125 (Ind. Ct. App. 2002). We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. Id. We will not reweigh the evidence nor judge witnesses' credibility, and will consider only the evidence most favorable to the trial court's ruling. State v. Friedel, 714 N.E.2d 1231, 1235 (Ind. Ct. App. 1999).

### II. Reasonable Suspicion

The trial court concluded the deputy did not have probable cause to stop Lodde, and therefore any evidence gathered after the stop must be suppressed. Lodde asserts this

4

statement was, in part, "merely a scrivener's error by the Court and that the Court intended to use the words 'reasonable suspicion' in it's [sic] ruling." Brief of Appellee at 6 n.1. Lodde concedes that reasonable suspicion is the appropriate standard here. Id.; see State v. Sickle, 792 N.E.2d 51, 54 (Ind. Ct. App. 2003) ("Probable cause is not necessary; rather, the officer must have a reasonable suspicion of criminal activity to make an investigatory stop."), trans. denied.

The principles governing the reasonable suspicion necessary for an officer's brief investigatory stop are well-settled:

> An officer has the authority to briefly stop a person for investigatory purposes if the officer has reasonable suspicion of criminal activity. Reasonable suspicion exists where the facts known to the officer and the reasonable inferences therefrom would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. The facts supporting a reasonable suspicion that criminal activity is afoot must rise to "some minimum level of objective justification" for the temporary detention of a person to be valid. Although reasonable suspicion requires more than inchoate and unparticularized hunches, it is a less demanding standard than probable cause and requires a showing of "considerably less" proof than that required to establish wrongdoing by a preponderance of the evidence. Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances.

Bridgewater v. State, 793 N.E.2d 1097, 1099-1100 (Ind. Ct. App. 2003) (citations omitted), trans. denied. Another consideration when determining whether reasonable suspicion exists is the "immediacy of the threat to public safety." Kellems v. State, 842 N.E.2d 352, 356 (Ind. 2006), reh'g granted on other grounds, 849 N.E.2d 1110 (2006). In short, "circumstances . . . justify[] a stop when a police officer is able to point to specific and articulable facts which, when considered together with the rational inferences drawn from those facts, create a reasonable suspicion of criminal conduct on

5

the part of a vehicle's occupants." Bogetti v. State, 723 N.E.2d 876, 879 (Ind. Ct. App. 2000).

We conclude that the record indicates the trial court erroneously applied the probable cause standard in ruling on Lodde's motion. Although the trial court verbally referred to reasonable suspicion once at the close of the suppression hearing, the trial court also verbally referred to probable cause, and in its order it stated that Deputy Lendermon did not have probable cause. The trial court's analysis in its denial of the State's motion to correct errors also relies on a case which concerned probable cause. Despite Lodde's appellate contention, we do not believe this to be a scrivener's error. Because the trial court applied the wrong standard, we reverse its order granting Lodde's motion to suppress and remand with instructions for the trial court to apply the reasonable suspicion standard to the facts of this case.

## Conclusion

The trial court erred in applying the wrong legal standard in ruling on the motion to suppress. Therefore, we reverse and remand.

Reversed and remanded.

BAKER, J., and KIRSCH, J., concur.